(No. 6280.   February 27, 1937.)

THE PENN MUTUAL LIFE INSURANCE COMPANY, a Corporation, Respondent, v. LEONARD H. IRETON, Appellant.

[65 Pac. (2d) 1032.]

468

Oppenheim & Lampert for Appellant.

Richards & Haga for Respondent.

GIVENS, J.—September 30, 1925, respondent issued appellant a life insurance policy containing a permanent and total disability clause under which respondent, upon appellant's application, began payments June 4, 1928, of $20 per month, continuing until November 28th, 1933. December, 1928, appellant filed affidavits with the United States Veterans' Bureau at Boise, and by various appeals to the Board of Appeals at San Francisco and the Council of Appeals in Washington, D. C., was granted compensation for a presumptive service-connected disability, i. e., active tuberculosis to a degree of ten per cent or more prior to January 1, 1925. Thereafter, January 26, 1932, appellant verified a complaint filed in federal court to recover payments under a War Risk Insurance policy on the theory that he had become totally and permanently disabled due to his military service, specifically enumerating influenza, bronchitis, pulmonary tuberculosis, tuberculosis of the spinal column (bone tuberculosis), and arthritis as the cause of his permanent total disability.

November, 1933, respondent company becoming cognizant of this suit and appellant's various showings, brought suit in equity to cancel the disability provision of the policy, on the ground that the appellant had knowingly and fraudulently made misstatements in his medical examination to respondent company in his application for insurance.

After a trial without a jury, the district court made the following findings with regard to these representations:

"IV

"That defendant in his written application for such policy of insurance intentionally and willfully concealed from plaintiff the condition of his health and the fact that he was not in sound physical condition at the time of making said application.

.    .    .    .    .    .    .    ..    .    .    .

"XI

"That the said statements, answers and representations so made by the defendant in his application for insurance and relied upon and believed by the plaintiff as true when it issued the said policy were material to the risk assumed by the plaintiff under the said policy, and the said policy was obtained by the defendant because of the untrue, false and misleading statements, answers and representations made by him in his said application, and plaintiff would not have issued said policy of insurance had it known before the same was issued the true facts regarding defendant's previous illnesses and diseases, and regarding his true physical condition.

"XII

"That on or about the 17th day of May, 1928, the defendant made application to this plaintiff for disability benefits under said policy of insurance in which he claimed that he had become totally disabled on the 1st day of November, 1927, and that the nature of the disability was tuberculosis of the first and second lumbar vertebrae, and from time to time thereafter the said defendant has made reports to plaintiff in substance to the effect that he was totally disabled from tubercular spine and arthritis of hip.

"XIII

"That plaintiff, relying upon the proof so submitted of total disability and upon the statements, answers and representations made by defendant in his said application for insurance, and not otherwise, paid to the defendant monthly disability benefits under said policy at the rate of $20.00 per month, commencing on or about May 28, 1928, and continuing for a period of 67 months, the last payment being made on

November 28, 1933; that the monthly payments so made by plaintiff to defendant aggregate the principal sum of $1,340.00. That in addition thereto, plaintiff, relying upon the proof of total disability so submitted by defendant and upon the false statements, answers and representations made by defendant in his said application for insurance, and not otherwise, waived six annual premium payments on said policy, beginning with the premium payment due September 28, 1928, said premium payments being in the amount of $55.12 each, making a total amount of premium payments waived of $330.72.

. . . . . . . . . . . . . . . .

## "XVI

"The facts, if any, alleged in defendant's cross-complaint which were not admitted by the plaintiff's answer thereto, and which have not been fully covered by the foregoing findings of fact, are not true and have not been sustained by the evidence."

and others in line with these specifying the particulars in which he had made false statements, their falsity, appellant's knowledge of their falsity and concluded therefrom that the statements had been made with knowledge and sufficient intent to deceive, to relieve respondent from further compliance with the provisions of the policy, and entered judgment canceling that portion of the policy, and awarding respondent $2,039, the amount paid appellant under the disability clause and the amount of the premiums waived.

No assignment of error challenges the correctness of the judgment requiring the repayment of the money in the event the provisions in question are canceled. As will be noticed hereafter, the assignments of error challenge only the provisions of the judgment with regard to cancelation.

In support of its allegations and contention that appellant had made false statements with regard to his health, physical condition, and previous ailments, respondent introduced copies of various affidavits filed by appellant in connection with his claim before the United States Veterans' Bureau in connection with his attempt to secure compensation because of the impairment of his health occasioned by his military service. These affidavits were presented through Mr. A. H.

Christiansen, Chief Attorney of the United States Veterans' Facility at Boise, Idaho. No question is raised as to Mr. Christiansen's being the proper custodian of these records. It was stipulated with reference to the copies as follows:

"It is hereby stipulated and agreed by and between the parties hereto through their respective attorneys of record that the annexed are true and correct copies of plaintiff's Exhibits Nos. 12, 13, 14, 15, 16, 17, 18, and 19 introduced in evidence at the trial of the above cause, and that the originals of said exhibits may be withdrawn and the said copies substituted.

"Dated January 30, 1935.

"RICHARD & HAGA
"Attorneys for Plaintiff
"OPPENHEIM & LAMPERT
"Attorneys for Defendant."

Objection however was made that these affidavits were confidential and privileged under section 456, Title 38, U. S. C. A., 43 Statutes, 615, June 7, 1920, chapter 320, sec. 30. The justification for the introduction is based upon section 456, subdivision (e), *supra,* and section 7, Title 1 of Public Act No. 2, 73d Congress, entitled "An Act to Maintain the Credit of the United States Government," reading as follows:

"§ 456. Files, records, etc., confidential and privileged. All files, records, reports, and other papers and documents pertaining to any claim for the benefits of the provisions of this chapter, whether pending or adjudicated, shall be deemed confidential and privileged and no disclosure thereof shall be made except as follows:

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"(e) The Administrator of Veterans' Affairs may authorize an inspection of Veterans' Administration records by duly authorized representatives of the organization designated in or approved by him under section 551 of this title under such rules and regulations as he may prescribe."

(Public—No. 2—73d Congress, Title I, section 7.)

"Sec. 7. The Administrator of Veterans' Affairs subject to the general direction of the President and in accordance with regulations to be issued by the President shall admin-

ister, execute, and enforce the provisions of this title and for such purpose shall have the same authority and powers as are provided in sections 425, 430, 431, 432, 433, 434, 440, 442, 443, 444, 447, 450, 451, 453, 455, 457, 458, 459, 459a, 459c, 459d, 459e, 459f, title 38, U. S. C., and such other sections of title 38, U. S. C., as relate to the administration of the laws granting pensions.''

and the germane portion of the executive order known as ''Veterans' Regulation No. 11,'' issued by the President of the United States March 31, 1933, as follows:

''I.   All files, records, reports, and other papers and documents pertaining to any claim, whether pending or adjudicated, shall be deemed confidential and privileged, and no disclosure thereof shall be made except as follows:

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

''(e) In any judicial proceedings when in the judgment of the Administrator of Veterans' Affairs such disclosure is deemed necessary and proper; . . . . ''

(1936 Cumulative pocket part of U. S. C. A. for title 38, page 233.)

With this further provision:

''II.   Any person desiring a copy of any record, paper, etc., in the custody of the Veterans' Administration, which may be disclosed under the above provisions, must make written application for same to the Veterans' Administration, stating specifically:

''(1) The particular record, paper, etc., a copy of which is desired and whether certified or uncertified;

''(2) The purpose for which such copy is desired to be used.''

Mr. Christiansen testified without objection that pursuant to this executive order the Administrator of Veterans' Affairs promulgated instructions No. 1 and 2, and that paragraph 20 of No. 1 related to the release of materials from the office of the Veterans' Bureau by a subpoena out of a court of competent jurisdiction, and further that paragraph 2 of the same instruction dated June 26, 1933, provides as follows:

''. . . . In the event of litigation in connection with commercial insurance policies the Chief Attorney may produce

the file in obedience to a subpoena in accordance with the provisions of the said Instruction number 1. Further, in connection with such litigation, information may be given from the files if to withhold same would tend to permit the accomplishment of a fraud or a miscarriage of justice, but compliance must be had with the regulation and instruction to the effect that an affidavit must be submitted showing what information is desired and the purpose for which it is to be used, and unless such information is furnished a fraud may be perpetrated or a miscarriage of justice may result.''

Mr. Christiansen was present in court in response to a *subpoena duces tecum,* having with him the affidavits in question here. The showing on the part of respondent in connection with the production, presentation, and introduction of these affidavits was first a letter dated June 12, 1934, addressed to Mr. Christiansen, detailing in substance the nature of the litigation herein and requesting permission to inspect the records desired, and their production at trial, accompanied by an affidavit of Mr. Oliver O. Haga, one of the attorneys for respondent, setting up more in detail the substance of the suit and the allegations of the complaint herein as to the statements having been made by the appellant in his application for the insurance involved herein, and summarizing what the affidavits in question would show as to contrary statements. This letter was acknowledged by Mr. Christiansen June 15th, 1934, stating that the request had been referred to the Solicitor of the Veterans' Administration at Washington, D. C., for consideration and instruction, such being given under date of June 30, 1934, to the manager of the Veterans' Administration Facility at Boise, Idaho, attention of Chief Attorney, as follows:

''Reference is made to your letter in this case dated June 15, 1934.

''Under the facts as presented the request of the Penn Mutual Life Insurance Company in this case is covered by the instructions contained in Veterans Administration Service Letter. Administrator's Office, dated June 26, 1933, relating to cooperation with such companies, and your office should accordingly cooperate to the fullest extent possible and fur-

nish such information contained in the Administration file as may be desired.

"By direction,
"JAMES T. BRADY,
"Acting Solicitor."

The result of which was in turn communicated to the attorneys for respondent by Mr. Christiansen under date of July 10, 1934, and thereafter the *subpoena duces tecum* was issued, the affidavits produced, and introduced.

Appellant's objection was as follows:

"Mr. LAMPERT: Now, if the Court please, we object to the answer to the question on the ground it is a confidential. communication, and all the reasons we argued and presented in connection with the motion to quash.

"The instruction, if such exists—and I have no doubt of it; the attorney stated he has the instruction—is beyond the authority of the Director to issue, and is certainly beyond the authority of the Congressional Act."

The pertinent portion of which is that the departmental instruction was beyond the authority of the director to issue and beyond the authority of the Congressional Act.

In the first instance, respondent's showing was sufficient to satisfy the department which acted, authorizing the production of the affidavits, and indicates that the department considered they had the power under the Federal statute and executive order to so act and perforce considered the President had authority to act, and the executive order indicates the President considered he had power to act.

■ Section 456, Title 38, U. S. C. A., *supra,* gave general discretion to the administrator. The act, section 7, Title 1 of Public Act No. 2, 73d Congress, *supra,* and the executive order were not out of harmony with subdivision (e) of section 456, *supra,* and from a careful examination of the following authorities it is evident that language sufficiently similar to be pertinent, has been held to grant powers such as exercised by the department here. (*United States v. Bailey,* 9 Pet. (U. S.) 238, 9 L. ed. 113, *United States v. Ickes,* 82 Fed. (2d) 879 at 880, 65 App. D. C. 273; *Shouse v. Moore,* 11 Fed. Supp. 784; *United States v. Griffin,* 12 Fed. Supp. 135; *La Motte v. United States,* 254 U. S. 570 at 576, 41

Sup. Ct. 204; 65 L. ed. 410; *United States v. Sugar*, 243 Fed. 423 at 432; *United States v. Morehead*, 243 U. S. 607, 61 L. ed. 926, 37 Sup. Ct. 458; *United States v. Grimaud*, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. ed. 563; *United States v. Nelson*, 199 Fed. 464.)

So the admission of these affidavits was not erroneous, and assignment of error 10 (a) is thus disposed of.

Assignments of error Nos. 2, 5, 6, 7, 9, and 11 may be considered together because they in effect challenge the findings of fact and supporting evidence as incorrect and insufficient to show false or misleading statements with intent to deceive, and sufficiently material to justify the conclusions of law that the disability feature of the policy in question here should have been canceled.

The showing with regard to contradictory or false and misleading statements, the basis and gist of the action, are to be found in the answers in the medical examination in connection with the application for the policy of insurance herein, and affidavits filed by appellant, his own and others, his oral testimony given at the trial, his complaint in the federal court, and statements of officials of respondent company that if true answers had been given in the particulars hereafter noted, other further investigation would have been made by the company, and that either because of such investigation or the answers themselves, the policy would not have been issued.

The material questions and answers on the medical examination together with the photostatic copy of the original application are attached to the original policy of insurance which was with such attached documents, admitted as plaintiff's exhibit ''2,'' without objection. Thereafter a photostatic copy of the questions and answers given by appellant in connection with his application for insurance, and his examination therefor by the physician are identical in substance, admitted as plaintiff's exhibits ''5'' and ''6.'' In passing, we will dispose of assignment of error 10 (b), (i), and (j). The first, an objection to a statement by Dr. Dillard, the assistant medical director of respondent company, testifying that this medical examination did not contain certain statements, on the ground that the exhibit spoke for itself. The

justification for the answer was that the doctor should be permitted to testify as an expert and explain the exhibits. It is doubtful if the exhibits required any such explanation because the questions and answers, except as to certain diseases, enumerated, are clear and plain. Conceding without deciding that the answer should not have been admitted, there was no error because the case was being tried to the court without a jury, and there was other competent evidence to the same effect, in which event it will be presumed the court did not consider the inadmissible evidence, and appellant was not prejudiced by the ruling. (*Knauf v. Dover Lumber Co.*, 20 Ida. 773, 120 Pac. 157; *Bales v. Weaver*, 36 Ida. 704, 213 Pac. 342; *Morton Realty Co. v. Big Bend I. & M. Co.*, 37 Ida. 311, 218 Pac. 433; *Blackfoot City Bank v. Clements*, 39 Ida. 194, 226 Pac. 1079; *Burlington Sav. Bank v. Grayson*, 43 Ida. 654, 254 Pac. 215; *Goody v. Maryland Casualty Co.*, 53 Ida. 523, 25 Pac. (2d) 1045.)

The objection to plaintiff's exhibit "6" was that the justification for its admission was without foundation, it being based upon the deposition of Mr. Tonkin, which was not admitted and the objection should have been sustained, but this is likewise without prejudice because the cross-examination of appellant sufficiently identified and authenticated the exhibit.

Turning now to the substance of the questions and answers, No. 11, A, B, and C, No. 15, B, and No. 16 are as follows:

"11. A. Are you now in good health?  A. Yes.
　　 B. When were you last attended by a physician or consulted one?  B. Jan. 1925
　　 C. For what disease  C. Hydrocele

. . . . . . . . . . . . . . . .

"15. B. Have you had asthma, consumption, spitting of blood, habitual cough and expectoration, palpitation, or any disease of the throat, heart or lungs?  B. No.

. . . . . . . . . . . . . . . .

"16. Have you ever had illness, disease, injury or operation other than as stated by you above? If so, give full particulars, date, duration, severity, etc., of each. Use reverse side if necessary. (Answer) No."

Plaintiff's exhibit ''15,'' a copy of an affidavit filed by appellant in connection with his claim for compensation with the Veterans' Bureau, on January 5, 1929, stated this in connection with his general health in 1925:

"Leonard H. Ireton being first duly sworn deposes and says: That in January 1925, he went to the Veterans' Hospital at Boise, Idaho, to receive treatment for his back; that he was told by the attending physician that he was suffering from hydrocele and was operated upon for that ailment; This operation did not relieve the pains in the back of this affiant, and in February of 1925, he received further treatments which consisted of the application to his back of hot packs, but this treatment gave him no relief and in March 1925, affiant left the said Veterans' Hospital at Boise and did not return for further treatment because he believed that he could not get relief. . . . . Affiant further states that ever since the fall of 1924 he has been totally disabled for the performance of any sort of service connected with his business as a stockraiser or otherwise. . . . . ''

Argument is made that appellant did not know he had tuberculosis of the spine until 1929 or thereabouts, yet in his affidavit he repeatedly stated that in 1925 his health was bad and he was totally disabled for work. Inability to work and general bad health are not technical terms, and if in 1929 appellant knew he was in bad health and could not work in 1925, he must have then known in 1925 his health was bad, yet he stated unequivocally in the application herein that his health was good.

With regard to tuberculosis of the spine, and when he had it, there is a letter of Dr. Kackley, exhibit ''22,'' dated November 1928 as to his diagnosis in 1924, and the latter portion of this letter reaffirming his (Dr. Kackley's) earlier belief does not negative or lessen the force of his statement

that in 1924 he had diagnosed appellant's condition as tuberculosis of the spine and so told appellant. Plaintiff's exhibit "16" contains similar statements.

In question 11, D (plaintiff's exhibits "5" and "6") appellant further stated that he had good recovery from his operation for hydrocele, yet in his affidavit, plaintiff's exhibit "19" he said he secured no relief from the operation.

With regard to the origin or beginning of his disability in his application to respondent company for disability benefits, he stated under No. 5 and No. 6:

"5. Describe fully ) Tuberculosis first and
A. Nature of disability. ) second lumbar vertebrae.
B. Cause. )
"6. On what date did disa- )
bility become total and )
has it been continuous ) November 1st, 1927.
since that time? ) Yes."

Yet in his affidavits to the Bureau he stated that this same disability, that is, tuberculosis of the spine dated from the time of his service, long prior to 1927.

(Exhibit A to complaint.)

"That while said Leonard H. Ireton was in the military service of the United State as aforesaid and while said contract of insurance was in full force and effect, this plaintiff did contract—

Influenza
Bronchitis
Pulmonary Tuberculosis
Tuberculosis of the Spinal Column (bone tuberculosis)
Arthritis. . . . . "

█ Appellant's own testimony:

"Q. Were you at that time, the date of taking the application, so far as you had knowledge of it, in good health?

"A. Yes, sir.

. . . . . . . . . . . . . . . . .

"A. When I went into his office he told me to take off all my clothes and I took them off, and he examined my heart and lungs, and I told him about the hydrocele operation that they did up here at the Veterans Bureau, and he examined that, and examined me for rupture; and I told him they had

given me treatments up there for lumbago or muscular rheumatism in my back, and he had me bend over, and he examined me. . . . . And he asked me how I felt now, and I told him I hadn't been bothered in the back for some months, and had no soreness now . . . .

. . . . . . . . . . . . . . . . .

"Q. And there appears the statement, 'Give date of illness or injury which caused present disability.' And your answer is, 'November 1, 1927.' Is that the beginning of the disability, that is your disability from which you were being operated on at that time, so far as you know?

"A. Yes, sir.

"Q. And the statement appears there, in answer to question 5, 'Tuberculosis first and second lumbar vertebrae.' Where did you get that information which you placed upon that application, Mr. Ireton?

"A. Mayo Clinic.

"Q. And did you at any time previous to that hospitalization there which resulted in your making out of that application there, or during which time you made out that application, did you before that time have knowledge of the existence of that disease?

"No, sir.

"Q. (By Mr. Lampert.) You had been examined by physicians previous to that time, on various occasions?

"A. Yes, sir.

"Q. Had any of them told you of the existence of that disease?

"A. No, sir.

. . . . . . . . . . . . . . . . .

"Q. During that time did you have any pains in your back? (early summer of 1925).

"A. Not the latter part of the summer, no.

. . . . . . . . . . . . . . . . .

"A. That fall when I was feeding these cattle down there, my back commenced to bother me, and I went to Soda Springs to see Dr. Kackley.

"Q. And what did he tell you he was treating you for, or what did he treat you for, so far as you know?

"A. The first time I went to see him, he gave me some ointment to rub on my back, and gave me some pills to take—some medicine, and told me it was lumbago; and then I went back down to feeding those cattle, and my back didn't seem to be any better, so I went back to him in about a week, and he examined me and he said to me, he said, 'You are too young a man to be crippled up,' he said, 'in the back, that way,' he said, 'There must be something else.' But he didn't tell me what else. He gave me some different medicine, told me to try that, but I never went back to Dr. Kackley any more; and I left there about a week after that, and didn't go back to him. . . . . ''

was sufficient to be considered by the trial court as bearing upon the main question, that of falsity and intent, and overcomes appellant's contention that all the material testimony offered was by "deposition and documentary, and this reviewing Court is in as favorable position for judging the truthfulness of witnesses and weight of the evidence as was the Trial Judge, and should consider the same as though originally heard in this Court."

Appellant was examined and cross-examined before the trial judge who could consider not only the substance, but the demeanor and conduct of the witness on the stand, which removes this case from the rule contended for by appellant.

██ ██ We may accept for this case appellant's contention, without approval or disapproval, that the applicable law is that false statements justifying the cancelation of the policy must be known to be untrue by applicant when made, and there must be evidence of a conscious design to defraud, and that a statement by an applicant for insurance that he is in said condition cannot be said to be untrue as a matter of law, unless he has an ailment to appreciably affect his health, and still there is sufficient evidence to sustain the findings herein and conclusions based thereon. When a man says he is good health, and completely recovered from an operation, and at another time states under oath, that at that time he was in bad health, incapacitated for work, did not recover from the operation, had been told he had the disease or ailment for which he later seeks a disability benefit, the conclusion

both as to facts and law is justified that he intentionally made the false statement for the purpose of deceiving. Fraud is to be determined from all the facts and circumstances of the case. (27 C. J. 65, sec. 200b; *Tage v. Alberts,* 2 Ida. 271, 13 Pac. 19; *Pocatello Security Trust Co. v. Henry,* 35 Ida. 321, 206 Pac. 175; 27 A. L. R. 337; *Young v. California Ins. Co.,* 55 Ida. 682, at 693, 46 Pac. (2d) 718.)

Assignment of error No. 8 is disposed of by the above discussion and holding.

Assignments of error Nos. 1, 4, 7, 10, (d), (e), (f), (g), (h), and (o) may be considered together as they challenged the finding and admission of evidence relative to whether the insurance company would have issued the policy if true answers had been given at the time of the medical examination, in line with the later statements made by appellant in his application to the Veterans' Bureau.

Evidence by officials of the company was properly admitted and sufficiently certain when all of the testimony on this phase of the controversy is considered, to the effect that the company had no knowledge of appellant's health other than in the application for insurance and his medical examination, and that if the true facts had been stated by him, and known by the company, the policy would not have been issued.

Conceding some of the objections to certain portions of the above testimony should have been sustained at the time they were made, subsequent competent evidence corrected such error, if any, in view of the fact that the trial was to the court without a jury. (*Burlington Sav. Bank v. Grayson, supra,* and *Hartley v. Bohrer,* 52 Ida. 72, 11 Pac. (2d) 616.)

This disposes of all the assignments of error except such as challenge rulings, the subject matter of which are immaterial to the disposition of the cause as outlined herein.

The only conflict in the evidence arises by reason of the contradictory statements made by appellant himself, on the one hand when he applied for the insurance, and on the other when he applied for compensation from the Veterans' Bureau and filed his complaint in the federal court. This conflict the trial court on sufficient evidence supplied by appellant him-

self, or which emanated from him in the first instance, resolved in respondent's favor.

Judgment is therefore affirmed. Costs to respondent.

Morgan, C. J., Holden, and Ailshie, JJ., concur.