581 P.2d 350

**Chris J. ISAACSON,
Plaintiff-Respondent,**

v.

**Orville Jay OBENDORF,
Defendant-Appellant.**

**No. 12368.**

Supreme Court of Idaho.

July 12, 1978.

William F. Gigray, III of Gigray, Miller, Downen & Weston, Caldwell, for defendant-appellant.

Wayne E. Davis of Alexanderson, Davis, Rainey & Whitney, Caldwell, for plaintiff-respondent.

DONALDSON, Justice.

Chris J. Isaacson, plaintiff-respondent, initiated this paternity suit against Orville Jay Obendorf, defendant-appellant, alleging that he is the father of her child, born out of wedlock on April 28, 1975. The district court, sitting without a jury, held for Isaacson and awarded delivery expenses, support payments of $150 per month beginning with the date of birth, and entered an order of filiation declaring Obendorf's paternity of the child. Obendorf appeals from the district court's judgment. We affirm in part, reverse in part, and remand.

Isaacson filed suit in the District Court of the Third Judicial District, Canyon County, pursuant to the provisions of I.C. § 7–1101 et seq., known as the Paternity Act. Obendorf denied that he was the father. At Obendorf's request and expense, both parties and the child voluntarily submitted to blood tests.

At trial several facts were established as uncontested. Isaacson and Obendorf had sexual intercourse during the first week of July, 1974. The parties had no contact with each other during the remainder of the month of July. Isaacson had a menstrual period during the latter part of July. Isaacson gave birth to a seven pound eight ounce girl on April 28, 1975. Dr. Robert J. Ring, Jr., an obstetrician and gynecologist, testified that, although it was not impossible, there was between a ninety-seven and ninety-nine percent chance against the baby being conceived during the first week of July, 1974. Dr. Ring testified that a baby of the size in question and born on the date in question was conceived to a ninety percent certainty within ten days of August 5, 1974.

There was conflicting testimony concerning sexual intercourse between Isaacson and Obendorf during the early morning hours of August 14, 1974. Isaacson testified that she and a friend met Obendorf at a bar and then went to his house between 12:00 and 12:30 a. m. the morning of August 14. She testified her girlfriend left and that she and Obendorf had sexual intercourse between 1:00 and 2:00 a. m. that

day. Isaacson testified that she drove Obendorf's car, a yellow Corvette, home later that morning. Isaacson's mother and father both testified that Isaacson was driving a yellow Corvette on August 14, 1974.

Obendorf testified that he did not see Isaacson on the night and morning in question. He stated that he had a party at his house on August 13, 1974 and that it lasted until approximately 2:00 a. m. the next morning. Obendorf testified he left his house the night of the party between 8:00 and 9:00 p. m. and returned at between 1:00 and 2:00 a. m. the next morning. Obendorf denied lending his car to Isaacson on August 14, but did admit to lending her the car on the July date.

Obendorf's testimony was corroborated by Doug Marston, a friend who attended the party on August 13. Marston denied seeing Isaacson at the party and testified that Obendorf returned to the party alone between 1:00 and 2:00 a. m. that morning. Marston stated that when he left the party at approximately 2:00 a. m., Obendorf was alone.

At trial the court admitted in evidence, over defense objections, the results of a blood test given to the parties and the child. The cover letter from the laboratory that accompanied the blood test report stated that paternity by Obendorf was not excluded. The report was admitted in evidence without any accompanying testimony by the expert who performed the tests.

Only limited testimony was elicited as to a reasonable sum for the support and education of the child and the financial ability of Obendorf to pay such a sum. Isaacson's father testified that he had supported the child since the date of birth at an approximate cost of $120 per month. Isaacson testified that it cost $8.90 per day to support the child. This figure included $5 per day for the cost of a baby sitter, but the record is silent as to the number of times per month a sitter was used or would be used in the future. The only evidence received by the court as to Obendorf's ability to make such support payments was that he earned $500 per month, furnished his own

gas for his car, and had his own residence. Judgment was entered for Isaacson on August 2, 1975.

Obendorf sets forth three assignments of error: (1) the trial court erred in its findings of fact and conclusions of law as to his paternity of the child born to Isaacson; (2) the trial court erred in admitting in evidence a blood grouping test which did not exclude paternity and was not accompanied by expert testimony as to the finding; and (3) the trial court erred in determining a fair and reasonable sum for the support and education of the child.

I

■ In a disputed paternity proceeding the burden of proving the defendant to be the father of the child is on the plaintiff; but such proof need only be by a preponderance of the evidence. *Berry v. Chaplin*, 74 Cal.App.2d 652, 169 P.2d 442 (1946); 10 Am.Jur.2d Bastards § 105. Obendorf contends the record does not support the finding of his paternity in light of the burden of proof.

■ The trial court partially based its finding of paternity on the admission by Obendorf that he had intercourse with Isaacson in early July; even though expert testimony showed that it was highly improbable that this was the date of conception. A finding of paternity based solely on the act of intercourse in July would be clearly erroneous. As stated in *Beaman v. Hedrick*, 146 Ind.App. 404, 255 N.E.2d 828, 832 (1970):

> . . . An act of intercourse coupled with the *probability* of conception at that time will support a determination of paternity. An act of intercourse plus the *possibility* of conception, however, as a matter of law, cannot serve to support such determination.

■ However, the court's finding of paternity was not solely based on Obendorf's admission of intercourse with Isaacson in July. There was substantial, competent, though conflicting evidence as to intercourse between the parties on August 14,

1974. When an action is tried to the court, without benefit of a jury, determinations as to the credibility of witnesses, the weight to be given their testimony, its probative effect and the inferences and conclusions to be drawn therefrom, are all matters within the province of the trial court. *Thomson v. Marks*, 86 Idaho 166, 384 P.2d 69 (1963). In the words of the trial judge, ". . . I have got to decide who I believe, and I am satisfied that the credibility of Miss Isaacson is greater than that of the defendant. . . ."

■ We hold that the trial court's finding as to paternity is supported by substantial, competent, although conflicting evidence and was not error. Factual findings made by the trial court and supported by substantial, competent, although conflicting evidence will not be disturbed on appeal. *Randall v. Ganz*, 96 Idaho 785, 537 P.2d 65 (1975); *Ridley v. Vander-Boegh*, 95 Idaho 456, 511 P.2d 273 (1973); *Johnson v. Joint School Dist., No. 60, Bingham County*, 95 Idaho 317, 508 P.2d 547 (1973).

II

The appellant's second assignment of error challenges the admission in evidence of blood test reports which did not exclude the paternity of the appellant and which were admitted without any accompanying expert testimony.

■ The blood tests were administered to the parties at the request of the appellant and were not ordered by the trial court pursuant to I.C. § 7-1115. However, I.C. § 7-1115 is persuasive as to the allowable evidentiary uses of blood test results in paternity actions, and clearly contemplates only the admission in evidence of blood test results which exclude paternity. I.C. § 7-1115 provides: "The Court, on motion of either party, may order the mother, her child and the defendant to submit to one or more blood tests to determine *whether or not the defendant can be excluded as being father of the child*. . . ." (emphasis added) The weight of authority, consistent with the above discussed statute, is that

evidence of blood grouping test results excluding paternity is admissible, and that evidence of results failing to establish non-paternity is inadmissible.[1] 10 Am.Jur.2d Bastards § 118 (1963); Clark, Domestic Relations § 5.3 (1968); McCormick on Evidence § 211 (E. Cleary ed. 1972). *See also* Annot., 46 A.L.R.2d 1000 (1956).

Respondent argues that the case of *Comish v. Smith*, 97 Idaho 89, 540 P.2d 274 (1975), supports the proposition that blood test results which do not exclude paternity are admissible in evidence. In *Comish*, this Court did not address the issue of the allowable evidentiary uses of blood tests in paternity actions, thus respondent's reliance on *Comish* is misplaced.

■ The evidentiary use of blood test results in paternity actions should be limited to those that exclude paternity. The trial court erred, albeit harmless error, in admitting in evidence blood test results which did not exclude paternity.

The trial court also erred in admitting into evidence, over proper objection by the appellant, the blood test results without requiring the accompanying testimony of the expert who conducted the tests. It is clear that the report in question was being used for the purpose of proving the truth of the matter asserted therein, and as such was inadmissible hearsay.

■ Hearsay evidence is defined as follows in McCormick on Evidence § 246 (E. Cleary ed. 1972): "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion of the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *See also* 5 Wigmore, Evidence § 1361 (Chadbourn rev. 1974); Bell, Handbook of Evidence for the Idaho Lawyer 126 (2d ed. 1972).

■ The essence of the hearsay rule is a requirement that testimonial assertions shall be subjected to the test of cross-examination. The theory being that the many possible deficiencies, suppressions, sources of error, and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination. 5 Wigmore, Evidence § 1362 (Chadbourn rev. 1974). The blood test report, an unsworn, out-of-court written statement of an expert concerning the possible paternity of the appellant, was admitted without giving the parties an opportunity to examine the expert who made the tests as to his competency, the methods used by him, and other factors relating to the reliability of the test. Respondent established no foundation for the admission of the report under any of the numerous exceptions to the hearsay rule. There is no statutory authority in Idaho for the admission in evidence of blood test results unaccompanied by expert testimony. Idaho Code § 7–1116, dealing with court ordered blood tests in paternity actions, requires that the expert who made the test testify as to his findings and be subject to cross-examination.

■ It does not appear from the record that the trial court considered the blood test results in making its determination of the

1. It should be noted that some states have enacted legislation which allows for the introduction in evidence of blood test results which do not exclude paternity. Nine states have enacted the Uniform Act on Blood Tests to Determine Paternity, which was approved by the National Conference of Commissioners on Uniform State Laws and the ABA in 1952. Section 4 of the Act, in addition to allowing evidence of exclusion, permits introduction of blood test evidence for possible paternity if the court in its discretion feels the blood factor is rare enough to be admitted as possible proof of paternity. Under the Uniform Parentage Act, enacted by five states and adopted by the National Conference of Commissioners on Uniform State Laws and the ABA, evidence relating to paternity may include blood test results, weighed in accordance with the evidence, of the statistical probability of the alleged father's paternity. A joint committee of the ABA section on Family Law and the American Medical Association recently recommended that the National Conference of Commissioners on Uniform State Laws develop new legislation or amend existing acts to simplify the admissibility in evidence of test results and probative effect thereof, including the evidentiary value of estimations of "likelihood of paternity."

paternity of the child. Where an action is tried before the court, without a jury, and incompetent evidence is admitted, this Court will presume that the trial court did not consider such evidence in coming to its findings, unless the contrary is shown. *Shrum v. Wakimoto*, 70 Idaho 252, 215 P.2d 991 (1950); *Penn Mutual Life Insurance Co. v. Ireton*, 57 Idaho 466, 65 P.2d 1032 (1937); *Goody v. Maryland Casualty Co.*, 53 Idaho 523, 25 P.2d 1045 (1933); *Burlington Savings Bank v. Grayson*, 43 Idaho 654, 254 P. 215 (1927); *Brinton v. Johnson*, 41 Idaho 583, 240 P. 859 (1925); *Bales v. Weaver*, 36 Idaho 704, 213 P. 342 (1916). As stated in 5 Am.Jur.2d Appeal and Error § 799, citing *Russell v. Curran*, 66 Wyo. 173, 206 P.2d 1159 (1949): "Since a trial judge is supposed to be able to sift the wheat from the chaff, in a case tried by a court without a jury the admission of incompetent evidence is not presumed to have been prejudicial." Since the record does not affirmatively show that the trial court's finding as to paternity was influenced by the improperly admitted evidence, the admission of the report into evidence was not prejudicial error.

### III

In his final assignment of error, Obendorf contends that there is insufficient evidence in the record to support the court's finding of a reasonable sum for the education and support of the child, and that the court erred in awarding support from the date of birth of the child.

Historically, the primary purpose of the bastardy proceeding was the relief of the community from the burden of supporting the child born out of wedlock. The holdover of this view is the tendency in some states to limit support to subsistence levels. The modern view is that no such limit should be imposed and that the support of the child born out of wedlock should be determined in the same way as the support of the legitimate child, that is, with

reference to the needs of the child and the resources of the father. Clark, Domestic Relations § 5.3 (1968). Idaho Code § 7–1121 reflects this modern approach and bases the support award in a paternity action on the finding of a reasonable sum for the support and education of the child and the financial ability of the father to make such a payment.[2] *Cf. Nielsen v. Nielsen*, 87 Idaho 578, 394 P.2d 625 (1964).

The burden of proof rests upon the plaintiff to establish a reasonable sum for the education and support of the child and the financial ability of the defendant. *Berry v. Chaplin*, 74 Cal.App.2d 652, 169 P.2d 442 (1946). The record contains only a paucity of evidence on both issues. An appellate court will not interfere with the determination of the trial court as to support unless there has been an abuse of discretion. *Cf. Brashear v. Brashear*, 71 Idaho 158, 228 P.2d 243 (1951).

However, this discretion is not arbitrary, it must conform with the requirement of the statute, taking into consideration the needs of the child and the financial ability of the father. We find the record insufficient to support the court's finding as to a reasonable sum for support and education of the child. Greater testimony as to the living situation of the child, its needs, the amount of care and support available to her from her mother and the financial ability of the father should be presented on remand.

Isaacson in her complaint requested that Obendorf be ordered to pay or reimburse amounts paid for the support of the child prior to the date of any order of filiation. Idaho Code § 7–1121 states: "The order of filiation may direct the father to pay or reimburse amounts paid for the support of the child prior to the date of the order of filiation." The record is clear that Isaacson did not incur any debts or expend her own funds supporting the child. Isaacson's father testified that he supported the child

---

**2.** Idaho Code § 7–1121 provides in part: "In a proceeding in which the court has made an order of filiation, the court shall direct a father possessed of sufficient means or able to earn such means to pay monthly or at other fixed periods a fair and reasonable sum for the support and education of the child until the child is eighteen (18) years of age. . . ."

with his funds, and that he had no agreement or understanding with his daughter that she would repay the funds. At trial on this issue Mr. Isaacson testified as follows:

Q (BY MR. DAVIS) Have you been reimbursed in any way for taking care of your daughter during her pregnancy, or taking care of your grandchild?

A No, I have not.

Q Have you had any agreement, has there been any understanding with Chris that she would reimburse you at a future time for this?

A Ah __ not really.

The trial court ordered Obendorf to pay $150 per month for support of the child, beginning with the date of birth. The trial court on the similar issue of Isaacson's right to recover for doctor, hospital and other expenses which her father paid for and of which she had no obligation to repay, held, inconsistent with its approach on the payment of child support prior to the order of filiation, that Isaacson could not recover for expenses her father had paid. The trial court stated:

. . . The evidence reflects that certain expenses were incurred by Mr. Virgil Isaacson, the father of plaintiff, in providing doctor, hospital and other expenses for said minor child and plaintiff. He is not a party plaintiff to this action, and I am of the opinion that he is not the real party in interest in this action to recover such expenditures, especially in view of his direct testimony that he had no understanding with his daughter that he would be reimbursed by her. In other words, the testimony does not show that the plaintiff paid or incurred any expenses whatsoever in connection with the' birth and care of the child, except the sum of Two Hundred Ninety Seven Dollars ($297.00) which she owes to Dr. Borron for delivery. She is entitled to recover that sum from the defendant. As the matter stands, I am without jurisdiction to award Virgil Isaacson damages in this action. I am not saying that such expenses are not recoverable, but they are not recoverable in this action.

Since Miss Isaacson had no obligation to reimburse her father and did not expend her own funds, she was not the proper party to recover for the support paid by her father for the period prior to the order of filiation. To do so would allow Miss Isaacson to receive a windfall. Mr. Virgil Isaacson, the plaintiff's father, was the proper party to recover the expenditures made for support. Mr. Isaacson could have intervened in the paternity action under I.R.C.P. 24 or could have brought an independent action to recover his expenditures from Obendorf.

Idaho Code § 32–1003 provides support for such an independent action stating: "If a parent neglects to provide articles necessary for his child who is under his charge, according to his circumstances, a third person may in good faith supply such necessaries, and recover the reasonable value thereof from the parent." Although the statute does not speak directly to the factual situation in the present case, we see no reason to bar a third party from bringing an action to recover the reasonable value of necessaries supplied in good faith to a child born out of wedlock against a person later adjudged to be liable for the support of the child in a paternity action.

It was improper in this case for the trial court to order Obendorf to pay support from the date of the child's birth. We are not holding that such expenses are not recoverable, rather, they are not recoverable in the present action brought solely by Miss Isaacson, who did not expend any funds in support of the child.

The district court's order of filiation declaring Obendorf's paternity is affirmed. The judgment setting support is reversed and remanded for further proceedings consistent with this opinion. No costs allowed.

McFADDEN and BISTLINE, JJ., and SCOGGIN, J. pro tem., concur.

BAKES, J., concurs in result.