609 P.2d 168

Andrew STEPHENS,
Plaintiff-Respondent,

v.

CITY OF NOTUS, a Municipal Corporation of the State of Idaho, Defendant-Appellant.

No. 12571.

Supreme Court of Idaho.

April 4, 1980.

William J. Brauner, Caldwell, for defendant-appellant.

Wayne E. Davis, of Alexanderson, Davis, Rainey & Whitney, Caldwell, for plaintiff-respondent.

PER CURIAM.

Stephens' claim, as once amended, alleged: that he owned property within the City of Notus which he proposed to subdivide for home building; that in 1973 he conferred with the Notus mayor and city council, and as a result thereof was advised that if he would at his own expense install the water and sewer systems, the City would waive sewer and water hook-up charges of $235 each, and the only charge would be a $12 per lot fee for inspection and turn-on; that Stephens fully performed, and then sold the lots to a brokerage firm,[1] which firm was required by the city to pay $235 per lot, causing Stephens to reimburse the brokerage firm.

The city denied any agreement such as contended by Stephens, and as affirmative defenses pleaded failure of consideration and the statute of frauds, in that the alleged agreement was not in writing.

The controversy was submitted to the trial court sitting without a jury. The court entered judgment for Stephens in accordance with his claim, ruling that Stephens was entitled to prevail on principles of equitable estoppel and unjust enrichment—which rulings are assailed on this appeal. We need not discuss the estoppel issue because of our view that the city has not carried its burden of proving error on the part of the trial court in upholding Stephens' claim on the unjust enrichment theory.

The trial court was at liberty to find from conflicting evidence that such an agreement did in fact take place. True, it was not in writing; equally true there are no council minutes reflecting the agreement.[2]

"Although defendants argue that no written agreement was executed between the parties, unjust enrichment does not depend upon the existence of a valid contract. *Continental Forest Products v. Chandler*, 95 Idaho 739, 518 P.2d 1201 (1974). . . .

"The essence of the quasi-contractual theory of unjust enrichment is that the defendant has received a benefit which would be inequitable to retain at least without compensating the plaintiff to the extent that retention is unjust. *Continental Forest Products v. Chandler, supra; Bair v. Barron*, 97 Idaho 26, 539 P.2d 578 (1975). Cf. *Bastian v. Gafford*, 98 Idaho 324, 563 P.2d 48 (1977)."

*Hertz v. Fiscus*, 98 Idaho 456, 457, 567 P.2d 1, 2 (1977).

■ Notus claims that Stephens by reason of his past experience and previous dealings knew better than to rely on an oral

---

1. Of the 18 lots in the subdivision, 16 were sold to the brokerage firm, and 2 to individuals. Stephens' theory of recovery is the same as to all lots.

2. As pointed out in the city's motion for new trial, two councilmen later (out of office) verified the reaching of an agreement, and two denied it. The fifth member was usually absent. The ex-mayor and ex-city clerk also signed the paper, addressed to the new council, verifying the fact that the agreement had been reached. Two ex-councilmen and the ex-mayor testified for Stephens, as did the clerk.

agreement. This contention is disposed of by the further statement that "one acting through a mistake caused by his own lack of due care may be entitled to restitution where unjust enrichment has been found." *Id.*

The record adequately shows unjust enrichment. The district court was careful to explain the reasoning behind its ruling:

"It seems to me in this case there is a defect in the defendant's position. By its position the City would have the duty, to carry out its position to a logical conclusion, to have put the sewer and water lines right up the street up the middle of the subdivision and have it such that it would be available to each lot. All that expense was borne by the plaintiff.

. . . . .

"The City had consideration for entering into such an agreement. It got the property in the City, and because it was short of money it got the defendant to finance a major part of the subdivision . . . ."

The "position" of Notus above referred to by the district judge apparently was that the Stephens subdivision was a single piece of property and the city had met its obligation by laying lines to the edge of the subdivision. The inconsistency, or "defect," arises with Notus, while still insisting that the whole subdivision was one property, collecting sixteen fees as though each lot within the subdivision were a separate property. We agree with the trial court that the subdivision was either one lot, in which case only one fee was appropriate, or it was sixteen lots, in which case Notus had the obligation to lay the lines to the edge of each. But it was Stephens who did so. We are not at all persuaded by the argument of Notus that Stephens voluntarily went to the expense of laying pipe throughout the entire subdivision because of the increased · value of the lots, which he presumably recovered when he sold them. The fact remains, however, that Notus collected the hook-up fees after Stephens had sold the lots, with Stephens in turn obliged to reimburse his buyers, and seek restitution from Notus.

Notus also claims that Stephens was obligated to perform the work on the subdivision, and thus there was neither consideration to support a contract nor grounds for a claim of unjust enrichment. In support of this contention Notus cites I.C. § 50–1326, which requires that before a plat may be filed with the county clerk and recorder, a sanitary restriction must be placed upon the plat. Before any construction on the parcels may begin, this restriction must be removed by filing a certificate of approval of public water and/or sewer facilities obtained from the state board of health. While it is true that sewer facilities were a prerequisite of any further construction, I.C. § 50–1326 does not establish whose duty it is to provide sewer facilities. If, because Notus wanted to include the new subdivision in its city limits, it agreed to have Stephens provide the facilities in exchange for waiving hook-up charges, we cannot say that Stephens had a pre-existing duty to provide sewer facilities such as to deprive the bargain of any consideration on Stephens' part.[3] Notus obtained a valuable benefit—the addition of new property to its tax base—and, having promised a waiver of hook-up fees as an inducement, may not be relieved of that promise.

Notus discusses other theories of defense which it asserts necessitate a reversal, but, as variations on themes already discussed, we find no merit in them.

■ Notus also alleges several erroneous rulings in the admission of evidence, but none appears to us to merit discussion. It suffices to say that any error was harmless, for the court below had ample competent evidence before it upon which to reach a conclusion that Notus was unjustly enriched at Stephens' expense. Where incompetent evidence is admitted before the trial court sitting without a jury, it will be presumed that the trial court did not consider such in reaching its findings unless the contrary is

3.  Stephens also agreed to provide much more than the minimum required by I.C. § 50–1326. He provided roads graded to county standards, electric lines, fire hydrants, and other preparations for construction.

shown. *Isaacson v. Obendorf,* 99 Idaho 304, 581 P.2d 350 (1978).

 It is axiomatic that factual findings made by the trial court will not be disturbed on appeal where supported by substantial competent evidence. *Isaacson, supra; Lester v. Lester,* 99 Idaho 250, 580 P.2d 853 (1978).

The judgment is affirmed. The petition for rehearing is denied, and costs to respondent.