819 P.2d 561

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Letcher Ray POWELL, Defendant–Appellant.**

**No. 17510.**

Supreme Court of Idaho,
Boise, February 1990 Term.

Aug. 19, 1991.

Rehearing Denied Nov. 21, 1991.

Alan E. Trimming, Ada County Chief Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent. Jack B. Haycock argued.

McDEVITT, Justice.

The defendant appeals his conviction and sentence for lewd conduct with a minor, I.C. § 18–1508. The defendant assigns as error: (1) the trial court's denial of his collateral estoppel motion; (2) the trial court's ruling on evidentiary matters; (3) the trial court's verdict which the defen-

dant asserts the evidence does not substantiate; (4) the trial court's failure to make specific findings; and (5) the imposition of a sentence which was allegedly excessive. We affirm the conviction and sentence.

The defendant's seven-year-old daughter was the subject of a petition under the Child Protective Act (CPA). After the CPA hearing but before the magistrate had issued his decision, defendant was indicted on one count of lewd and lascivious conduct with a minor. Shortly after the indictment issued, the CPA magistrate found that the defendant had physically abused his daughter, but that the evidence concerning sexual abuse was inconclusive. The defendant moved to dismiss the indictment on the basis that the State was collaterally estopped from prosecuting the criminal charge inasmuch as that issue had been resolved, favorably to him, in the CPA proceeding. The trial court denied the motion and set the case for trial. Trial was originally scheduled for September of 1987, but was continued because the State had failed to comply with discovery requests.

The ten-day trial was eventually held in December of 1987 and January of 1988. Against the strong advice of counsel, defendant waived his right to a jury trial. During the course of the trial, the district judge reserved a number of evidentiary questions for resolution at a later time. At the conclusion of the trial, the district judge found the defendant guilty and sentenced him to a ten-year fixed term and an additional ten-year indeterminate term. With the defendant having waived the right to a jury trial, the court became the trier of fact. The ultimate issue to be tried was the innocence or guilt of the defendant. In a criminal case tried to the court, the court is no more required to support its decision with findings than is a jury. In either event, the decision is the verdict rendered.

## I. COLLATERAL ESTOPPEL

The court ruled that an estoppel did not arise from the circumstance that the very incident which gave rise to the criminal

charge had earlier been the subject of a CPA proceeding.

At common law, "collateral estoppel . . . may flow from a civil case to a criminal prosecution." *State v. Walker*, 159 Ariz. 506, 509, 768 P.2d 668, 671 (1989). In addition, decisions of administrative agencies could be accorded preclusive effect in subsequent litigation. *State v. Dupard*, 93 Wash.2d 268, 609 P.2d 961 (1980); *see also People v. Watt*, 115 Mich.App. 172, 320 N.W.2d 333 (1982) (finding of fact by administrative law judge barred relitigation of issue in criminal proceeding).

■ Whether collateral estoppel precludes a criminal prosecution by reason of a civil action conclusion takes into account the following factors:

(1) Did the party "against whom the earlier decision is asserted . . . 'have a full and fair opportunity to litigate that issue in the earlier case?'"

(2) Was the issue which was decided in the prior litigation "identical to the one presented in the action in question?"

(3) Was the issue actually decided in the prior litigation. . . .

(4) "Was there a final judgment on the merits?"

(5) "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

*Anderson v. City of Pocatello*, 112 Idaho 176, 183–84, 731 P.2d 171, 178–79 (1987) (citations omitted).

■ In addition to those factors, when collateral estoppel is raised as a defensive measure in criminal proceedings, an additional question must be asked and answered: Was the defendant placed in jeopardy in the prior proceeding? *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel is a facet of the fifth amendment protection against double jeopardy).

■ Application of these factors to the case before us supports the trial court's conclusion that, notwithstanding that the State was a party to the CPA proceedings

which went to a final "judgment,"[1] the findings in the CPA hearing did not bar the criminal prosecution on the charge of lewd and lascivious conduct. However, the other requirements of *Anderson* were not satisfied.

Key to our decision is the question of issue identity. In CPA proceedings, the focus is on the welfare of the child; the relevant question is whether measures need to be taken to insure the child's safety and well-being. A conclusion as to whether a particular incident of abuse took place is not essential to the determination of the child's best interests under the CPA, and in fact it would be possible for a court to determine that a child had been abused and yet still decide not to change the child's placement. *See People v. Gates,* 434 Mich. 146, 452 N.W.2d 627 (1990). By contrast, criminal proceedings focus on whether the defendant is guilty beyond a reasonable doubt of a particular charged crime or crimes. Although the evidence received in each proceeding may be very similar, the issues for which that evidence is offered as proof differ significantly. We therefore conclude that in the CPA proceeding the question of whether the defendant had sexually abused his daughter was not an "issue of ultimate fact [which had] been determined by a valid and final judgment." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).

The focus and purpose of the two different proceedings is also germane in deciding whether the defendant was put in jeopardy during the CPA action.

> Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution.... [T]he risk to which the term jeopardy refers is that traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.'

*Breed v. Jones,* 421 U.S. 519, 528–29, 95 S.Ct. 1779, 1785–86, 44 L.Ed.2d 346 (1975) (citations omitted).

Unlike a criminal prosecution, a CPA proceeding does not have the effect of placing a parent in jeopardy.

## II. EVIDENTIARY RULINGS & SPECIFIC FINDINGS OF FACT & CONCLUSIONS OF LAW

The defendant asserts that the trial court made erroneous rulings on evidentiary matters, and that because the court's guilty verdict is not based on any written findings, he is unable to mount a challenge on his appeal. The court orally rendered its verdict, saying:

> But after considering and thinking and listening and based on all the statements, I must find you guilty beyond a reasonable doubt, and I am going to find you guilty beyond a reasonable doubt.

In response to a motion for findings of facts filed by the defendant, the court then adopted his oral findings, signed them, and entered them into the record.

The defendant objected to the admission of testimony from Marcus Powell, the defendant's son, and Dawn Leffler, the defendant's daughter, on the grounds that their testimony involved events that were too remote both in time and in place, and also on the grounds that it was irrelevant. Some of this testimony concerned sexual contact between the defendant and his daughter, Dawn, occurring as early as approximately 1975, when she was eight years old, and in places as remote as North Carolina and Illinois. The defendant also objected to the admission of the interview notes of Kim Huitt, a social worker.

The defendant filed a motion in limine to exclude this evidence, which motion was denied. During the trial, defense counsel renewed his objections to the testimony of Marcus Powell and Dawn Leffler, to which the court responded that because it was a court trial, he would allow the evidence to

---

**1.** Although the court retains *jurisdiction* under the CPA until the child reaches the age of eighteen, I.C. § 16–1604, a final decision about the placement of the child is made after a CPA hearing is held. That placement cannot be changed without additional proceedings under the CPA.

come in, and entertain motions to strike at the completion of the testimony. When the defendant then made a motion to strike all of the testimony, that motion was denied. As to the objection to the interview notes of the social worker, the trial judge allowed them to be marked and admitted, stating that he would only take into account what was legally admissible.

A court trial obviously differs significantly from a jury trial. However, this difference should not result in an evidentiary free-for-all. We must determine whether this evidence was properly admitted and considered by the trial judge.

■ This Court has held in the past that in a trial to the court, the admission of evidence is largely discretionary. In *Guillard v. Department of Employment*, 100 Idaho 647, 603 P.2d 981 (1979), we stated:

Although Idaho has no discernible evidentiary rules applicable in non-jury civil cases, it is clear that the rules in non-jury cases regarding admission of evidence are more liberal than in jury cases. G. Bell, Handbook of Evidence for the Idaho Lawyer 14 (1972). For example, this Court will not reverse a trial court in a non-jury case on the basis of an erroneous admission of evidence unless it appears that the opposing party was misled or surprised in a substantial part of its case, or that the trial court materially relied on the erroneously admitted evidence. *Duthweiler v. Hanson*, 54 Idaho 46, 28 P.2d 210 (1933). In trials before the court, it is presumed that the trial court did not consider incompetent or inadmissible evidence in making its findings. *Isaacson v. Obendorf*, 99 Idaho 304, 581 P.2d 350 (1978); *Shrum v. Wakimoto*, 70 Idaho 252, 215 P.2d 991 (1950).

*Guillard*, 100 Idaho at 650, 603 P.2d at 984.

■ A similar standard has been employed in criminal cases tried to the court. In *State v. Miles*, 77 Wash.2d 593, 464 P.2d 723 (1970), the defendant was convicted of rape and second degree assault on two women. The Washington Supreme Court, in considering the admission of evidence, wrote:

The action was tried to the court sitting without a jury. In such instances a liberal practice in the admission of evidence is followed in this state, supported, as it is, with a presumption on appeal that the trial judge, knowing the applicable rules of evidence, will not consider matters which are inadmissible when making his findings. *State v. Bell*, [59 Wash.2d 338, 368 P.2d 177 (1962) ], *supra*. And, in non-jury proceedings a new trial ordinarily will not be granted for error in the admission of evidence, if there remains substantial admissible evidence to otherwise support the trial court's findings. *State v. Ryan*, 48 Wash.2d 304, 293 P.2d 399 (1956).

*State v. Miles*, 464 P.2d at 728. *See State v. Hadd*, 127 Ariz. 270, 619 P.2d 1047 (1980); *State v. Eckman*, 9 Wash.App. 905, 515 P.2d 837 (1973).

We, as did the Washington Supreme Court, hereby extend the rule heretofore applied only in civil cases to non-jury criminal trials. We hold that the trial court considered only that evidence that was admissible in making its findings and conclusions, and that there was no error in the admission of evidence.

## III.  THE SENTENCE

■ The imposition of a particular sentence is within the discretion of the trial court. *State v. Arambula*, 97 Idaho 627, 550 P.2d 130 (1976); I.C.R. 35. The decision of the trial court will not be disturbed on appeal without a showing of an abuse of discretion:

'It is well established that the sentence to be imposed in any particular matter is within the discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion appears. A sentence that is within the limits prescribed by statute ordinarily will not be considered an abuse of discretion.' *State v. Seifart*, 100 Idaho 321, 322, 597 P.2d 44, 45 (1979). 'Where a sentence is within the statutory limits, an appellant has the burden of showing a clear abuse of discretion on the part of the court impos-

ing the sentence.' *State v. Chapa*, 98 Idaho 54, 558 P.2d 83 (1976). This sentence was within the statutory limits. *State v. Cotton*, 100 Idaho 573, 577–78, 602 P.2d 71, 75–76 (1979). *See also State v. Delin*, 102 Idaho 151, 627 P.2d 330 (1981).

A review of the record does not persuade us of an abuse of discretion in the sentencing proceedings or in the sentence imposed. We affirm.

BAKES, C.J., and BOYLE, J., concur.

JOHNSON, Justice, concurring and dissenting.

I concur as to the Court's ruling on collateral estoppel and as to the sentence and join in the dissent of Bistline, J. as to the admission of inadmissible evidence.

BISTLINE, Justice, dissenting:

There are two major problems with the conviction of Letcher Powell: (1) The trial judge's apparent conviction of Powell for the acts of sexual abuse among the members of his family rather than for an act of sexual abuse by the defendant of his youngest daughter for which he was charged; and (2) The trial judge's admission of inadmissible evidence, including hearsay and testimony on prior uncharged acts.

## CONVICTION NOT ON THE BASIS OF THE ACT FOR WHICH DEFENDANT WAS CHARGED

The defendant was charged with a single count of lewd conduct with a minor, the complaint alleging that defendant had intercourse with his youngest daughter. In his oral findings following final argument the trial judge stated:

(Proceedings following final argument)

Tuesday, January 5, 1988

THE COURT: Well, Mr. Powell, I don't think that there is any question that *I still stick with my original findings that this child was sexually abused, and that your son [ ] had sexual intercourse with her*. That's very

obvious from the evidence. And I so reiterate.

There is also no question in my mind that physically and mentally *your family* has abused this child. Now, I'm not so sure from the evidence that I have heard that this is serious physically, but I'm sure that it has a terrible mental effect upon the child.

I don't know what your family has done to create such a situation in your home, but I don't think any children ought to be raised in your home.

Now, I have listened to this child's statements *through others*, and I have listened to tapes and I have reread yesterday some of the statements made by the child.

And I don't think there is any question there was a lot of fantasy in thought and inconsistency in the statements of the child.

*This case is bad enough that I really for the first time—maybe not the first time, but one of the few times—I really wish that the jury could have heard this*. I'm very sorry you waived the jury because it is a very difficult matter, and maybe the good Lord will give me the ultimate wisdom to make the appropriate decision.

*But after considering and thinking and listening **and based on all the statements**, I must find you guilty beyond a reasonable doubt*, and I am going to find you guilty beyond a reasonable doubt.

And I'm going to raise the bond to a hundred thousand dollars and I'm going to remand Mr. Powell to custody.

And I am going to set sentencing in lieu of objections for February 5th, 1988, at 1:30.

And, Mr. Bailiff, would you take Mr. Powell in custody.

THE BAILIFF: Yes, Your Honor.

THE COURT: Is there anything further we should take up.

MR. ROSENTHAL: Not from the state, Your Honor.

THE COURT: All right. Court is in recess.

(The matter then concluded.)

It is Ordered that the above shall constitute the official findings of this Court.

1/7/87

/s/ Robert G. Newhouse
District Judge

At sentencing the judge stated:

(Judge Newhouse's comments
at sentencing)

Tuesday, January 5, 1988

THE COURT: Would you rise and stand?

Well, Mr. Powell, I have to admit to you that this is one of the hardest cases for me to try that I have ever heard. *I admit freely that I don't really know the complete truth that went on here. I submit that no one does, even I suspect the children don't and because many things were fantasized in their mind and there were many statements and they talked to each other and back and forth.*

Everything that has gone on, of course, has been done in the secret, been in the closet so to speak, it's unknown. *And I submit to you that I might be wrong, but I don't believe that I am.*

And I do—if this is the situation, I believe it, and these attorneys have gone back and forth and chewed it over forever, the home life that you come from is an actual cess-pool, and it was so bad some of the things that I heard, I didn't rest well at night during the trial. *Many times I have wished over and over that you had asked a jury to hear this.* Even the attorneys got more worked up certainly than the average.

Now, the damage that you caused, as I determined, is going to affect our society for generations. We have *seven children* with no idea of any moral standards, and they'll likely sexually abuse their own children, along with each other, and their children's children will abuse their children, and this will perpetuate itself forever. *And there's no question in my mind, and I'm convinced of this, that you are the strong person in that family. You dominate the family. You're an extremely strong person.*

And if one-third of the things I've heard is true, it would make a good "R" movie, certainly better than most things I've seen. I've read about this type of family, the so-called incestuous family. I really couldn't believe that they were basically real until I heard this case.

I feel very strongly in this case based on these statements, and I have tried to pattern what I think is a fair sentence considering the severity of the matter as I view it.

Based on the thinking I've done, and I can assure you that's been a lot, I'm going to sentence you to the custody of the Idaho State Board of Correction under the Unified Sentence Law of the state of Idaho for an aggregate term of not more than 20 years. The court specifies a minimum period of confinement of 10 years and a subsequent indeterminate period of custody of 10 years. By that time, your children will certainly be of age and can protect themselves.

I'm going to remand you to the proper agent of the state board of correction in execution of this sentence, and the defendant is to receive credit for the number of days spent in jail prior to entry of this judgment, and I'll direct my presentence investigator to check with the jail and get an exact figure on that. I'll put it in the judgment of conviction, and if anybody has any objection, they can bring appropriate motions to this court.

Now, the court, since the defendant is incarcerated in the custody of the Idaho State Board of Correction, determines that an order of restitution would be inappropriate at this time.

Good luck to you, Mr. Powell. *If I have made an error, why, I'm very sorry.* I think not. We'll take a short recess before we take up our next case.

(Emphasis added.)

It is not clear by any means that the trial court was able to find beyond a reasonable doubt that Powell was guilty of a specific incident of lewd conduct. Rather, it is more apparent that Powell was convicted

for his responsibility for the moral degeneration of his family, for acts of sexual abuse committed by his children, and for other acts of abuse for which he was not charged, but to which some of his children testified. If the case is not to be reversed and remanded for a new trial because of the evidentiary errors (to be discussed below), it should at least be remanded to the district court with the direction that the court prepare some finding or findings as to whether it finds Powell to be guilty beyond a reasonable doubt of the specific incident for which he was charged, and if so, the court should then identify the evidence in the record which supports that finding.

### ADMISSION OF INADMISSIBLE EVIDENCE

At trial numerous evidentiary issues were hotly contested. The trial judge chose to admit all of the disputed evidence, stating only that he would later give his ruling as to its admissibility. The judge later did deny defendant's motion to strike the testimony of defendant's oldest son and oldest daughter, but there are *no* other instances in the record where the judge made a ruling on any of the objections he had earlier deferred.

Defendant objected to the testimony by his oldest son and oldest daughter, on the grounds that it was irrelevant because the events testified to were remote in time and space. Initially, the court allowed the testimony on the basis that it was a court trial and the disputed testimony was subject to a motion to strike. Tr. Vol. III, 259. The son testified as to events which occurred in 1984 and 1986, *not* in Idaho, but in North Carolina and Illinois. He testified that he had sex with the youngest daughter, that this daughter had told him that her father had sexually abused her, and that his father sexually abused another one of the daughters. The oldest daughter testified that her father had sexually abused her from 1975 to 1984 while they lived in North Carolina and Illinois, and that her father physically abused the youngest daughter in Illinois. At the close of the oldest daughter's testimony the defendant again objected to the testimony of his oldest children as irrelevant and prejudicial. The trial court denied the motion to strike, stating that the testimony was relevant but furnishing no reasons to support its relevance.

The trial judge abused his discretion in admitting this evidence. The defendant correctly points out that the prior uncharged acts of sexual misconduct testified to were too remote in time and place to be relevant to the question of whether the defendant abused his youngest daughter in Idaho. *See State v. Boothe,* 103 Idaho 187, 646 P.2d 429 (Ct.App.1982) (prior acts occurring one year earlier were not too remote in time; court cites to a case holding that act three years prior was too remote); *State v. Maylett,* 108 Idaho 671, 701 P.2d 291 (Ct.App.1985) (trial court properly limited testimony on prior acts to a period of one year prior to the act charged). The prior acts of misconduct that defendant's oldest son and daughter testified to occurred between two and eighteen years prior to the act defendant was charged with and were therefore inadmissible as being too remote in time to be relevant. The prejudice to the defendant resulting from the admission of the oldest son's and daughter's testimony requires that the defendant be given a new trial.

The defendant also objected to the admission into evidence of the contact notes of Kim Huitt, the youngest daughter's caseworker and a witness for the state. When Huitt concluded her testimony, the prosecution offered her contact notes into evidence. Defense counsel objected on the grounds that the notes had only been used to refresh the recollection of the witness and contained extensive hearsay regarding conversations with several persons occurring during the investigation of the case. The trial court overruled the objection and allowed the notes into evidence, stating only that it would take into account what was legally admissible. Tr. Vol. IX, 912.

It is impossible on review to ascertain from this ruling what parts of the contact notes the trial judge found to be legally admissible or inadmissible, or even to veri-

fy that the court indulged itself in the exercise of allowing in or weeding out evidence. Since the judge made no finding as to which parts were inadmissible, it is possible that he found the entirety of the notes to be admissible. Where a large part of the notes contained inadmissible hearsay, it is almost certain that the defendant was prejudiced by the admission of this material. The primary contention on appeal, and a sound one, is that the district court's repeated failure to rule on defendant's evidentiary objections has resulted in defense counsel's inability to mount a meaningful appeal. This failure to rule on the evidentiary objections requires that the conviction be vacated and the defendant be granted a new trial.

## DISSENT ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice dissenting on denial of petition for rehearing.

"We, as did the Washington Supreme Court, hereby extend the rule heretofore applied only in civil cases to non-jury criminal trials."

Mr. Powell's petition for a rehearing is this day being denied, thus concluding his attempts at obtaining relief from a conviction and sentence both of which are wholly unjustified by the record which this court reviewed, and equally unjust to the state's taxpayers who will bear the burden of paying Mr. Powell's room and board for quite a period of time. Where there were two strong votes on this Court of five members for holding that Mr. Powell was convicted on the basis that the prosecution was allowed by the district court to establish its case on evidence which was *inadmissible,* and additionally, no record was presented as to how the court ruled on objections, it was believed that a reasonable exercise of judicial discretion would be to set aside one hour to rehear oral argument and re-evaluate the validity of the Court's opinion.

Particularly disturbing is the Court's unwarranted application of the Washington Supreme Court's *State v. Miles,* 77 Wash.2d 593, 464 P.2d 723, 728 (1970). To blindly accept the *Miles* decision is to also accept the two earlier Washington cases on which the *Miles* court placed full reliance, as is readily noted in the *Miles* excerpt which guides the Court in arriving at an opinion. Obviously, *State v. Bell* has not been examined by those in the majority, or else some citation more informative than *"supra"* would have been provided.

*State v. Bell* can be found at 368 P.2d at 177–94. That case does not reflect any credit on the Washington Supreme Court. It does display remarkable ingenuity. Apparently proceeding with a preconceived idea of where it was heading, the 1962 Washington Supreme Court harkened back fifty-five years to the 1907 case of *Degginger v. Martin,* 48 Wash. 1, 92 P. 674 (1907), where that earlier court after holding that it perceived no error in the controversy it had reviewed on appeal did suggest that, while the court in an action tried without a jury should reject all evidence clearly incompetent and immaterial to avoid encumbering the record, a liberal practice should be adopted in admitting evidence, so that the appellate court, in the event of an appeal, will on a trial *de novo* have all material facts before it for consideration, and thus avoid the necessity of the cause being remanded for the admission of material evidence which was erroneously rejected. *Bell,* 368 P.2d at 193. Let it be clearly understood that no criticism is made of what the Washington court repeated from *Degginger.* That statement is sound and this Court has spoken and rule-written similarly. The rub, and there is for certain a rub, is that the *1962 Washington Supreme Court used that gratuitous and harmless excerpt from* Degginger *as a springboard for the creation of a rule that in non-jury trials the liberal admission of evidence is encouraged, and that policy is furthered by the* **presumption** *on appeal that the trial judge, knowing the rules of evidence, did not consider matters which were inadmissible when making his findings.*

As a result of its own instantly manufactured presumption, the 1962 Washington Supreme Court was able to nimbly and peremptorily dispose of the one hundred twenty-three (123) assignments of error in *Bell*, which, while it listed them over fifteen pages of fine print, disposed of them *eo instanti* with its newly created presumption.

That may be the manner in which activist courts choose to act. For me, it is unfortunate that any member of this Court would yield to the temptation of "me-tooing" the Washington court, thus making it hereafter an Idaho rule which on its first day of life engenders the proposition that because of the trial court's failure to rule on objections, and failure to provide any clues as to how the decision was reached Mr. Powell will remain confined to serve a term for a crime for which there was no properly admitted evidence to sustain a conviction. The district court made it abundantly clear that Mr. Powell is now serving time because of the unacceptable sexual habits of his children, largely when they were not residents of Idaho, and some of which may have been desultory figments of prosecutorial imagination. In essence, it strongly appears that there is a substantial material variance between the charge of the information and the bench verdict of guilty of criminal conduct which was not charged, and which also did not consist of lesser included offenses. The Court today is given the opportunity to satisfactorily answer the well-voiced principles of law which are advanced in the briefs of counsel, which in my view are valid and persuasive; or alternatively, the Court can attempt a rationalized reply which clearly, concisely, and without hedging explains to a candid world how it can pretend that Mr. Powell was given a fair and proper trial, the result of which was only that the verdict is guilty, and you need not know how it was arrived at, and in particular, if the court is wronging you, then the court is sorry.

There is no doubting the sincerity of the trial court in that respect, but the better course by far would have been for this Court to appreciate the trial court's dilemma in enduring a non-jury trial which resulted in the judge having to assume the responsibility which ordinarily devolves not on one person, but on twelve. A proper resolution of this extraordinary circumstance would be for the trial court to just say "No" and impanel a jury. If there is any statute or case law prohibiting a district judge from so doing, it should be stricken. A trial judge in my view should not be burdened in a criminal trial by being both judge and jury. If judges continue to act as triers of fact, they should make clear, concise, and correct rulings when objections to evidence are made. In that way, this Court will be able to determine on review whether only competent evidence was used by the judge in reaching the verdict.