874 P.2d 1117

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ava L. GUSMAN, Defendant–Appellant.**

No. 19838.

Court of Appeals of Idaho.

June 8, 1993.

Review Granted July 30, 1993.

Appeal Decided, See 125 Idaho 805, 874 P.2d 1112.

Randolph E. Farber, Nampa, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for plaintiff-respondent. Douglas A. Werth argued.

SILAK, Acting Judge.

Ava Lynn Gusman appeals from the judgments of conviction entered following conditional pleas of guilty to driving under the influence, I.C. § 18–8004, and obstructing and delaying an officer, I.C. § 18–705. Charges of possession of a controlled substance and possession of drug paraphernalia were dismissed as part of a plea bargain with the state. After her arrest, Gusman refused to submit to an alcohol concentration test ("BAC test"). A license suspension hearing was held pursuant to I.C. § 18–8002. The magistrate found that Gusman was not the driver of the car and her license was returned.

In the subsequent criminal prosecution Gusman moved to dismiss the charges based on the theory that the state was collaterally estopped from pursuing a criminal prosecution because the magistrate had found that she was not the driver of the car and there was no probable cause to stop the car. The motion was denied and Gusman then agreed to the plea bargain, preserving the right to appeal the court's denial of her motion to dismiss. Gusman appealed to the district court which affirmed. For the reasons stated below we also affirm.

## FACTS AND PROCEEDINGS

On October 12, 1990, Gusman was in a car stopped by a Canyon County deputy sheriff. The officer proceeded to administer field sobriety tests to Gusman because the officer claimed Gusman had been driving and had swapped seats with the passenger. After her arrest for DUI Gusman refused to submit to a BAC. A license suspension hearing was held on November 13, 1990, pursuant to I.C. § 18–8002.

At the hearing, Gusman testified and was cross-examined by the state. Gusman stated she was not driving the car when stopped, was not under the influence of alcohol or drugs, and was not in a car that was weaving or showing an erratic traffic pattern. Gusman further testified that the arresting officer gave her field sobriety tests because he claimed she had switched seats with the person on the passenger side and that she passed all but the test for standing on one leg. Gusman testified that she told the officer the reason she failed the test was because she had been injured and had problems with her legs going numb.

On cross-examination, Gusman admitted to drinking two beers, but denied that she had stumbled when she got out of the car as the officer's affidavit indicated. The state was forced to rely on the arresting officer's affidavit because he did not attend the BAC hearing. The state moved for a recess in order to determine why the officer was not in the courtroom, however the court denied the request because the state had ample opportunity before the hearing to resolve that problem and another preliminary hearing was scheduled to start within minutes.

In deciding to return Gusman's license the magistrate made the following findings:

THE COURT: Based upon the evidence presented—the evidence shows that the defendant was not operating a motor vehicle, was not in the driver's—or was not in actual physical control of the motor vehicle and that there was really nothing about the stop of these people—or they were stopped or not.

[GUSMAN'S COUNSEL]: Very good, Your Honor.

THE COURT: The evidence doesn't indicated [sic] whether or not they were stopped or driving down the road or what.

.     .     .     .     .

THE COURT: But the evidence does show that she was not operating or in actual physical control of the motor vehicle and there's no evidence that the officer had reasonable grounds or probable cause to believe that she was and therefore, her license will be returned to her.

The state did not appeal this decision, but continued the criminal prosecution.

In the subsequent criminal proceeding Gusman moved for dismissal of the charges against her, arguing that the findings at the license suspension hearing should collaterally estop the state from prosecuting her. A hearing on the motion was held and the magistrate ruled that the state was not collaterally estopped from prosecuting the criminal charges. After plea negotiations, Gusman entered a conditional guilty plea to the charges of DUI and of obstructing and delaying an officer. She then appealed to the district court which upheld the magistrate's ruling on the motion to dismiss. The district court affirmed its decision after a rehearing. Gusman filed a timely appeal from the district court's determination. She argues that the magistrate's decision in the license revocation hearing should collaterally estop the prosecution of the criminal charges against her.

## STANDARD OF REVIEW

■ Whether collateral estoppel bars the relitigation of an issue "actually adjudicated, and essential to the judgment, in a prior litigation between the same parties is a question of law upon which we exercise free review." *Gilbert v. State,* 119 Idaho 684, 685, 809 P.2d 1163, 1164 (Ct.App.1991). In addition, where an appeal is taken from an appellate decision of the district court we review the record independently of the decision of the district court. *State v. Hayes,* 108 Idaho 556, 559, 700 P.2d 959, 962 (Ct.App.1985).

■ The standards governing application of collateral estoppel to criminal proceedings were set forth by the Idaho Supreme Court in *State v. Powell.*

Whether collateral estoppel precludes a criminal prosecution by reason of a civil action conclusion takes into account the following factors:

(1) Did the party "against whom the earlier decision is asserted ... 'have a full and fair opportunity to litigate that issue in the earlier case?' "

(2) Was the issue which was decided in the prior litigation "identical to the one presented in the action in question?"

(3) Was the issue actually decided in the prior litigation? ...

(4) "Was there a final judgment on the merits?"

(5) "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

*Anderson v. City of Pocatello,* 112 Idaho 176, 183–84, 731 P.2d 171, 178–79 (1987) (citations omitted).

In addition to those factors, when collateral estoppel is raised as a defensive measure in criminal proceedings, an additional question must be asked and answered: Was the defendant placed in jeopardy in the prior proceeding? *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel is a facet of the fifth amendment protection against double jeopardy).

120 Idaho 707, 708, 819 P.2d 561, 562 (1991).

## ANALYSIS

The first issue we address is the jeopardy issue. The Supreme Court in *Powell* quoted the definition of jeopardy set forth in *Breed v. Jones,* 421 U.S. 519, 528–29, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975), as follows:

Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution ... [T]he risk to which the term jeopardy refers is that traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.'

120 Idaho at 709, 819 P.2d at 563. The Court in *Powell* also stated that the focus and purpose of the two proceedings were germane to determining if a defendant was placed in the type of jeopardy necessary to invoke the doctrine of collateral estoppel from a prior civil proceeding. *Id.*

■ As the district court here noted, the license suspension proceeding is part of a civil scheme that serves a governmental purpose vastly different from criminal punishment. The statute itself states that "[a]ny suspension of driving privileges under this section shall be a civil penalty separate and apart from any other suspension imposed for

a violation of other Idaho motor vehicle codes or for a conviction of an offense pursuant to this chapter...." The legislative purpose behind the driver's license suspension proceeding is "to determine the status of driving privileges as swiftly as possible after the BAC test is refused." *Heth v. State,* 114 Idaho 893, 894, 761 P.2d 1245 (Ct.App.1988). The license revocation proceeding does not put the motorist in jeopardy because no criminal punishment is implicated, nor is the proceeding designed to vindicate public justice in connection with the crime of DUI. Rather, the proceeding inures to the benefit of the motorist who refuses the BAC test, and who may be successful in retaining his or her driving privileges. I.C. § 18–8002(4). We conclude, therefore, that Gusman was not placed in jeopardy during the license suspension proceeding. Thus, the application of collateral estoppel is not required under *Ashe* and *Powell.*

Lack of a constitutional basis does not mean that the doctrine of collateral estoppel should not apply, merely that it is not mandatory from a constitutional standpoint. The next step in the analysis is to determine whether the elements of collateral estoppel are present in this case, and, most crucially, whether from a policy standpoint it is appropriate to apply the doctrine here.

Even though we might conclude that the five elements enumerated in *Anderson* and quoted in *Powell* are present here, we nevertheless decline to apply collateral estoppel because to do so would undermine the legislative purpose and effect of the existing statutory scheme. As the Oregon Supreme Court has stated:

> [T]he principles of collateral estoppel and the other principles of *res judicata* are not to be applied in the abstract; they have validity only if their application will carry out the policy which these principles were designed to express. It is necessary, therefore, to examine ... the nature of the proceedings ... and to determine what ends would be served by permitting or denying further litigation on the issue [sought to be precluded].

*Griffin v. City of Roseburg,* 255 Or. 103, 464 P.2d 691, 693 (1970). In similar cases, other state appellate courts have declined to give preclusive effect to a prior civil suspension-type proceeding in a subsequent criminal DUI prosecution. *See People v. Moore,* 138 Ill.2d 162, 149 Ill.Dec. 278, 561 N.E.2d 648 (1990); *State v. Ratliff,* 304 Or. 254, 744 P.2d 247 (1987). We find the reasoning of these cases persuasive, and generally follow such reasoning below.

By enacting I.C. §§ 18–8004 and 8005, Idaho's legislature has made operating a motor vehicle while intoxicated a criminal offense and has provided for the imposition of various criminal penalties for violation of the statute. The purpose of these criminal provisions is to protect the public safety and welfare by deterring motorists from operating vehicles while intoxicated, and to vindicate public justice by punishing those who do. During the criminal proceedings conducted to prosecute violations of these statutes, all of the statutory and constitutional rights afforded defendants in criminal DUI prosecutions come into play. The defendant is entitled to be represented by counsel in all stages of the proceedings. The defendant also has the right to a jury trial, to cross-examine adverse witnesses, and to refrain from self-incrimination. Further, in such a criminal proceeding, the state carries the burden of proving each element of the offense beyond a reasonable doubt.

The nature of a license suspension hearing under I.C. § 18–8002 is very different from the criminal proceedings just described. In enacting I.C. § 18–8002, the legislature sought to provide an incentive for motorists to cooperate in determining their blood-alcohol content by a reasonably precise scientific method. *State v. Breed,* 111 Idaho 497, 501, 725 P.2d 202, 206 (Ct.App.1986). To accomplish this purpose, I.C. § 18–8002 provides for the summary suspension of the driving privileges of those motorists who refuse to submit to a BAC test when asked to do so by a police officer who has reasonable grounds to believe that the motorist is operating a motor vehicle while intoxicated. In order to accomplish the legislative purpose of inducing motorists to cooperate in taking BAC tests, and at the same time protect the right of motorists to retain their driving privileges

unless they are suspended through due process, section 18–8002 provides that the motorist may request a hearing to challenge the license seizure if the hearing is requested within seven days of the seizure. I.C. § 18–8002(4)(b). The scope of that hearing is limited to the question of why the motorist refused to take the BAC test. *Id.* The burden of proof is on the motorist, not the state, to show that the police officer either did not have probable cause[1] to stop the motorist and request that the motorist take a BAC test, or that the request violated the motorist's civil rights. *Id.* If the motorist fails to carry this burden of proof, or does not timely request a hearing, the motorist's license is automatically suspended for 180 days. As previously noted, the purpose of this hearing is "to determine the status of driving privileges as swiftly as possible after the BAC test is refused." *Heth,* 114 Idaho at 894, 761 P.2d at 1246.

The above discussion portrays the difference in purpose, procedure and effect between a criminal DUI proceeding and a license suspension proceeding under I.C. § 18–8002. If we were to give the results of license suspension hearings preclusive effect in subsequent criminal prosecutions, it would frustrate the purpose and design of the license suspension hearings, which are to determine the motorist's driving privileges "as swiftly as possible." This is because the state would then be compelled either to call witnesses and generally treat the proceeding as a full-blown criminal trial, or risk having the results of the suspension hearing preclude any subsequent criminal prosecution.

Given even the possibility that the results of a summary suspension hearing would act as collateral estoppel, the State would likely find it necessary to treat the suspension hearing as an integral part of the criminal trial rather than merely [a civil proceeding] at the disposal of the defendant in which the defendant can halt the otherwise automatic suspension of his driving privileges. The process would seldom if ever, be swift.

*Moore,* 149 Ill.Dec. at 282, 561 N.E.2d at 652.

Because application of the principle of collateral estoppel to give preclusive effect to the results of license suspension hearings in subsequent DUI prosecutions would likely frustrate the legislative purpose and intent behind I.C. § 18–8002, and because we do not perceive of any injustice that will be done to either party by declining to give preclusive effect to the license suspension hearings, we decline to do so. Accordingly, we affirm the order of the magistrate denying Gusman's motion to dismiss the criminal prosecution.

The judgments of conviction entered by the magistrate are affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.

---

1. In 1992, after the events giving rise to this case occurred, the legislature changed the wording of section 18–8002(4)(b). As amended, the statute requires the defendant to show that the police officer did not have *legal cause* to stop the defendant and request submission to a BAC test or that the request violated the defendant's civil rights.