59 P.3d 648 (2002)
STATE of Washington, Respondent,
v.
Ramiro Corona VASQUEZ, Petitioner.
No. 71984-5.
Supreme Court of Washington, En Banc.
Argued September 24, 2002.
Decided December 19, 2002.
Paul Wasson, Spokane, for Petitioner.
John Knodell, Grant County Prosecutor, Edward Owens, Deputy, Ephrata, for Respondent.
BRIDGE, J.
Petitioner, Ramiro Vasquez, seeks review of his conviction for driving while under the influence and possession of cocaine. In an administrative license suspension hearing that preceded Vasquez's criminal prosecution, a hearing officer found that the arresting officer did not have probable cause to stop Vasquez. Vasquez argues that in the subsequent criminal prosecution the State was collaterally estopped from revisiting the issue of probable cause and, therefore, his criminal conviction should be dismissed. We disagree.

I
Quincy Police Sergeant Scott Jones observed two vehicles making simultaneous u-turns at 1:50 a.m. on April 2, 2000. One of the vehicles drove up along the curb, kicking up debris. Sergeant Jones followed this car and paced it at 38 mph, which is above the posted speed limit of 25 mph. Once the vehicle stopped and parked in a Jackpot parking lot, Sergeant Jones contacted the vehicle and its occupants.
Vasquez was the driver of the vehicle. Sergeant Jones smelled alcohol on Vasquez and noticed that his eyes were bloodshot and watery. Sergeant Jones also saw a partially consumed six-pack of beer at the feet of the *649 front seat passenger. After being questioned, Vasquez acknowledged that he had consumed two or three beers. Sergeant Jones then asked Vasquez to step from the vehicle for field sobriety tests, which Vasquez did. A portable breath test that measures alcohol concentration was administered on Vasquez. His breath alcohol content was measured at .141. Since this measurement is above the legal limit of .08 and was taken within two hours after driving, Sergeant Jones arrested Vasquez for driving under the influence.[1] Prior to his placement in a holding cell at the police department, a search incident to arrest was conducted on Vasquez's person. Sergeant Jones found two folded one dollar bills containing a white powder that field-tested positive for cocaine. Following the search, Vasquez was charged with driving while under the influence (DUI) and possession of cocaine.
An administrative license revocation hearing was conducted before the conclusion of Vasquez's criminal prosecution. The hearing officer found that the evidence admitted "fail[ed] to establish there existed sufficient reason to stop Mr. Vasquez'[s] vehicle in the first instance."[2] Therefore, an order of dismissal was entered in favor of Vasquez. At the subsequent criminal prosecution, Vasquez moved to dismiss the criminal charges, arguing that the trial court was estopped from revisiting the question of probable cause. Vasquez also claimed, assuming arguendo collateral estoppel did not apply, that Sergeant Jones still did not have probable cause to stop Vasquez. The trial court denied Vasquez's motion to dismiss. Subsequently, Vasquez orally waived his right to a jury trial. The trial court found Vasquez guilty as charged.
Vasquez appealed his conviction to Division Three of the Court of Appeals, raising three issues: (1) collateral estoppel based on a finding by the administrative hearing officer, (2) lack of probable cause to stop, and (3) insufficiency of oral waiver of trial by jury.[3] The Court of Appeals affirmed the trial court's decision.[4] Vasquez petitioned to this court on a single issue for discretionary reviewwhether the probable cause determination in his license suspension hearing collaterally estopped the superior court from revisiting the same issue in the criminal prosecution. We granted Vasquez's petition for review.[5]

II

Collateral Estoppel
The doctrine of collateral estoppel is founded on the Fifth Amendment's guaranty against double jeopardy. State v. Williams, 132 Wash.2d 248, 253, 937 P.2d 1052 (1997). Under this doctrine, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be relitigated between the same parties in any future litigation. Id. at 254, 937 P.2d 1052 (citing Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). The party asserting collateral estoppel bears the burden of proving:
"(1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom [collateral estoppel] is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice."

Thompson v. Dep't of Licensing, 138 Wash.2d 783, 790, 982 P.2d 601 (1999) (quoting Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 262-63, 956 P.2d 312 (1998)).
*650 Vasquez has met the first three requirements of collateral estoppel. The issue of probable cause was adjudicated in the administrative license suspension hearing as well as being presented as an issue in the criminal prosecution. The administrative license suspension hearing ended in a final judgment on the merits. And, Vasquez and the State were both parties in the suspension hearing and criminal prosecution.
The fourth requirement of collateral estoppel, whether the application of the doctrine works an injustice, is the focus of this case.

Collateral Estoppel: Injustice Prong
In Thompson, we resolved an apparent discord in our cases on the meaning of the injustice prong of the collateral estoppel doctrine. 138 Wash.2d at 795, 982 P.2d 601. The injustice element is "most firmly rooted in procedural unfairness. `Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question.'" Id. at 795-96, 982 P.2d 601 (quoting In re Marriage of Murphy, 90 Wash.App. 488, 498, 952 P.2d 624 (1998)). In previously decided cases, we have noted the "unfairness of permitting an adjudication in an informal administrative setting, for example, to bar later criminal prosecutions." Id. at 796, 982 P.2d 601. The injustice factor recognizes the significant role of public policy. Williams, 132 Wash.2d at 257, 937 P.2d 1052. Thus, we may qualify or reject collateral estoppel when its application would contravene public policy. State v. Dupard, 93 Wash.2d 268, 275-76, 609 P.2d 961 (1980).
The question whether determinations made in an administrative license suspension hearing should bar relitigation of those determinations in subsequent criminal prosecutions is a case of first impression in Washington. However, other states have addressed this specific question and have ruled it does not.
In State v. Higa, 79 Hawai'i 1, 897 P.2d 928 (1995),[6] the Supreme Court of Hawaii declined to give license suspension hearings preclusive effect. In reaching its decision, the court noted that the State had not had an adequate opportunity to litigate the DUI charge at the administrative level. Id. at 936. It also opined that applying the collateral estoppel doctrine in this instance would defeat the very purpose of the administrative hearings "insofar as the prosecution would then seek to intervene and fully litigate [administrative] hearings." Id. If complete litigation were to be allowed in administrative hearings, it would prevent those proceedings from achieving their remedial goal"to protect the public by expeditiously removing potentially dangerous drivers from the state's highways." Id.
In State v. Gusman, 125 Idaho 810, 874 P.2d 1117 (1993),[7] the Idaho Supreme Court likewise refused to allow administrative license revocation hearings to preclude revisiting the same issues in subsequent criminal prosecutions. Idaho found that the license suspension hearing is part of a civil scheme that serves a governmental purpose, which is different from the criminal procedure. Id. at 1119. The legislative purpose behind the driver's license suspension hearing is "`to determine the status of driving privileges as swiftly as possible.'" Id. at 1120 (quoting Heth v. State, 114 Idaho 893, 894, 761 P.2d 1245 (Ct.App.1988)). Therefore, the Idaho court concluded that the administrative hearing did not put the driver in jeopardy because "no criminal punishment is implicated, nor is the proceeding designed to vindicate public justice in connection with the crime of DUI." Id.
*651 The facts of an Illinois case, People v. Moore, 138 Ill.2d 162, 561 N.E.2d 648, 149 Ill.Dec. 278 (1990), are quite similar to the case at hand. Moore was observed making two wide right turns by officers. When the officers approached Moore's vehicle, they detected a strong odor of alcohol on his breath and noticed that his eyes were bloodshot. Moore was arrested and given a Breathalyzer test, which showed he had a blood-alcohol content above the State's legal limit. At his administrative hearing, the hearing officer ruled that the police officers did not have probable cause to stop Moore. Moore then filed a motion to suppress in the criminal prosecution, alleging that the issue of probable cause had already been determined. The Supreme Court of Illinois held that the doctrine of collateral estoppel could not be used to bar litigation in the criminal proceeding. As in Higa, the Illinois statute directed that the license suspension hearing be swift and of limited scope. Id. at 651. If the administrative hearings were given preclusive effect, Illinois concluded that it would "render meaningless [the] legislative purpose." Id.
Although we have never addressed the question of whether an administrative license suspension hearing may have preclusive effect on a subsequent criminal proceeding, we have refused to apply collateral estoppel to criminal prosecutions following decisions in other types of administrative hearings. In Dupard, we held that the State is not collaterally estopped in a criminal case from relitigating an issue previously decided in favor of the defendant at a parole revocation hearing. 93 Wash.2d at 269, 609 P.2d 961. While a parolee on a previous narcotics conviction, Dupard was arrested for possession of cocaine and heroin in two separate incidents. One day prior to his arraignment, the parole revocation hearing was held. The board member conducting the hearing found that for purposes of revocation, Dupard was not guilty of the alleged parole violation. Armed with that decision, Dupard moved to dismiss the criminal prosecution based on the "not guilty" finding at the parole revocation hearing, which he asserted collaterally estopped the State from prosecuting him on the possession charges. This court concluded that the revocation hearing was not a new criminal prosecution, but one that was a continuing consequence of the original conviction. Id. at 276, 609 P.2d 961. Also, the question of whether a person had committed a crime was generally an issue "more appropriately addressed to the criminal justice system," rather than to an administrative hearing. Id. Furthermore, "[p]ractical public policy requires that new criminal matters, when charged in the criminal justice system, must be permitted to be there decided, unhampered by any parallel proceedings." Id. at 277, 609 P.2d 961.
In Williams, the Department of Social and Health Services brought an administrative action against Williams to recoup public assistance overpayments. 132 Wash.2d at 251, 937 P.2d 1052. The administrative law judge found that the over-issuance was an inadvertent household error and that Williams did not willfully or knowingly mislead the State in order to receive the overpayments. Id. at 252, 937 P.2d 1052. However, a little over a year later, the local county prosecutor charged Williams with welfare fraud, claiming that she obtained overpayment by means of willfully false statements or by willfully concealing information. In her motion to dismiss, Williams argued that collateral estoppel barred the criminal prosecution since the administrative hearing had determined that her actions were not willful. We held that the administrative hearing and the criminal prosecution were two wholly distinct actions. Id. at 257, 937 P.2d 1052. The administrative hearing's purpose was to determine whether Williams received overpayments and, if so, at what rate she should pay back the overpayments. On the other hand, the purpose of the criminal prosecution was to determine whether Williams had committed a crime. Thus, collateral estoppel did not apply. We further held that if collateral estoppel were to apply, it would force the State to conduct longer administrative hearings, which would cause greater delays and would leave "`district attorney offices to allocate a greater proportion of their ever-decreasing resources to administrative matters, rather than reserving these scarce resources for the actual prosecution of serious criminal cases in court.'" Id. at 258, 937 P.2d 1052 (quoting *652 People v. Sims, 32 Cal.3d 468, 651 P.2d 321, 337, 186 Cal.Rptr. 77 (1982) (Kaus, J. dissenting)).
In State v. Cleveland, 58 Wash.App. 634, 794 P.2d 546 (1990),[8] a fact-finding trial was held on a petition for dependency of Cleveland's stepdaughter. The basis for the claimed dependency was the allegation that Cleveland sexually abused his stepdaughter. The trial court dismissed the petition, asserting that the State had not shown by a preponderance of the evidence that the alleged sexual abuse had occurred. Before the dependency hearing was completed, however, Cleveland was charged with statutory rape and indecent liberties. After the completion of the dependency hearing, Cleveland moved for dismissal of the criminal charges on the grounds of collateral estoppel. Cleveland claimed that the criminal charges were based on allegations of sexual abuse that were identical to those heard and dismissed in the dependency action. The trial court denied the motion to dismiss. Id. at 636, 794 P.2d 546. Division One of the Court of Appeals affirmed the trial court's denial of defendant's motion to dismiss, asserting that a dependency hearing's focus is narrower than the typical criminal trial. Id. at 644, 794 P.2d 546. Thus, in a dependency hearing, the State normally does not need, nor does it perform, the extensive preparation generally required for criminal prosecutions. The Court of Appeals concluded, "if the State was faced with application of the doctrine of collateral estoppel to findings in dependency proceedings, there could well be a reluctance to conduct dependency proceedings in cases where one or more of the same issues would arise in subsequent criminal prosecutions." Id. Therefore, as a matter of public policy, issues adjudicated in dependency actions will not be collaterally estopped in subsequent criminal prosecutions.
Vasquez argues that Thompson is controlling in this case. 138 Wash.2d 783, 982 P.2d 601. However, Thompson is inapposite. Thompson, a commercial truck driver, was the subject of a random commercial vehicle check at a weigh scale on I-5. The state patrol trooper smelled stale alcohol on Thompson and observed he had red, watery eyes. The trooper asked Thompson if he had consumed alcohol, and Thompson answered that he had earlier that morning. Thompson was then asked to take a portable breath test and field sobriety tests, which he did. At Thompson's criminal prosecution, which was conducted before the license suspension hearing, the district court granted Thompson's motion to suppress the BAC results. Id. at 787, 982 P.2d 601. The suppression was allowed because the informed consent warnings were "`confusing and misleading, and would have prevented a completely intelligent decision.'" Id. (quoting Clerk's Papers (CP) at 12). Thompson's administrative hearing was held after the criminal prosecution. At the license suspension hearing Thompson argued that the BAC evidence was not admissible because of collateral estoppel. The hearing officer rejected this argument on the ground that the burden of proof in an administrative hearing is different from that of a criminal trial. Id. at 788, 982 P.2d 601. We ruled that collateral estoppel applies because the State had "the incentive, capability, and opportunity to litigate fully the issue in the criminal case and it must abide [by] the result." Id. at 800, 982 P.2d 601. In other words, the issue of probable cause was extensively litigated in the criminal prosecution, which had more dire consequences for the defendant. Thus, issue preclusion would apply in the subsequent administrative license suspension hearing.
Here, Vasquez is trying to preclude an issue from an administrative hearing in a subsequent criminal triala completely opposite situation from that of Thompson. We decline to hold that the converse of Thompson has the same preclusive effect.

Administrative License Suspension Hearing[9]
The Legislature enacted RCW 46.20.308 to address the increasing numbers of individuals *653 who drive on Washington roads under the influence of alcohol. The statute provides for a breath test and specifies the consequences of its results. If the breath test results in a blood alcohol content of 0.08 or more, or if the driver refuses to consent to a test, the driver's license may be suspended or revoked at an administrative hearing.[10] RCW 46.20.308(2)(a), (b). This hearing is to be conducted within 60 days. RCW 46.20.308(8). Because the hearing is not governed by the Administrative Procedure Act,[11] it is limited in scope. It will only "cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or any drug." Id. Furthermore, under RCW 46.20.329, which governs the license suspension hearing, the hearing officer may be the director of the Department of Licensing or one of the employees of the agency legal training is not required.[12]
Reviewing the legislative history to RCW 46.20.308, the public policy, which was intended to be furthered by its enactment, is clear. Similar to the states of Hawaii, Idaho, and Illinois, the Washington Legislature enacted this statute to "insure swift and certain punishment for those who drink and drive." RCWA 46.20.308 Historical and Statutory Notes, "Legis. finding, intent1983 ch. 165" at 387. The Legislature found this statute to be necessary for the "immediate preservation of the public peace, health, or safety," to free Washington roads of drivers who take the wheel under the influence of alcohol or controlled substances. RCWA 46.20.308 Historical and Statutory Notes, "Effective dates1995 ch. 332" at 386 (emphasis added).
The suspension and revocation hearings provided in the statute are expressly separate from the judicial action applicable to a person who is tried and convicted of DUI in court. 1983 FINAL LEGIS. REPORT, 48th Wash. Leg., Reg. Sess. at 96. To expedite the suspension and revocation hearings, RCW 46.20.308(8) relaxes evidentiary rules providing that the "sworn report ... of the law enforcement officer and any other evidence accompanying the report ... and the certifications authorized by the criminal rules for courts of limited jurisdiction" shall be admissible without further evidentiary foundation. Because this statute allows the arresting officer's report to come in as prima facie evidence that the officer had reasonable grounds to believe the driver was under the influence, officers rarely attend the administrative hearings to testify unless they are *654 subpoenaed. It is evident that the Legislature intended the administrative license suspension hearing to be adjudicated in a short span of time.
In this case, the issue of probable cause was resolved in an administrative license revocation hearing before the conclusion of Vasquez's criminal prosecution.[13] We do not have a complete record of the administrative hearing, the only evidence of the hearing being the order of dismissal. CP at 44. However, it is apparent that the hearing was conducted with little formality. The order states that the hearing was conducted telephonically between Vasquez, his attorney, and the hearing officer. Id. The State submitted two exhibits: (1) a copy of the report of breath/blood test for alcohol; and (2) the officer's report and accompanying documents. Id. at 44-78. No witnesses, not even Sergeant Jones, appeared to testify. The hearing officer made his decision based solely on the two exhibits that were submitted by the State.[14]
In a criminal trial, an officer's report is primarily used to refresh the testifying officer's memory of the events in question. Here, once he was refreshed with his report, Sergeant Jones was able to testify at the criminal trial in much greater detail to his recollection of the events preceding his stop of Vasquez, which constituted probable cause for the stop.[15] By contrast, there was neither testimony nor opportunity for direct cross-examination in the administrative hearing. The hearing officer adjudicated the issue of probable cause on limited evidence. In Vasquez's criminal prosecution, the issue of probable cause was litigated exhaustively.[16]

III
We conclude that for the same reasons of public policy that governed our holdings in Dupard, Williams, and Cleveland, determinations in an administrative hearing for the purpose of suspension or revocation of a driver's license will not preclude relitigation of issues reached there in a subsequent criminal prosecution. As in Dupard and Williams, the purposes of the Department of Licensing hearing and the criminal trial are fundamentally different in this case. The purpose of the administrative hearing was to determine whether Vasquez was entitled to retain his license to drive. The purpose of the criminal prosecution was to determine whether he should be punished for committing a crime. The latter inquiry "is more appropriately addressed to the criminal justice system." Dupard, 93 Wash.2d at 276, 609 P.2d 961. Further, if an administrative hearing takes on characteristics of a completely litigated trial, it would defeat the legislative purpose of conducting swift and expeditious administrative hearings. Finally, forcing the State to fully litigate matters at the administrative level would cause delays and deplete already scarce resources within the prosecutor's office. Williams, 132 Wash.2d at 258, 937 P.2d 1052.

IV
Public policy and the interest of justice mandate that the administrative license revocation hearing in this case not preclude the trial court from revisiting the issue of probable cause in the subsequent criminal prosecution. We hold that the trial court was not collaterally estopped from adjudicating the probable cause issue in the subsequent criminal prosecution.
We affirm the Court of Appeals.
*655 ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, IRELAND, CHAMBERS and OWENS, JJ., concur.
SANDERS, J. (concurring).
I concur with the majority disposition; however, I find the majority's attempt to distinguish Reninger v. Department of Corrections, 134 Wash.2d 437, 951 P.2d 782 (1998), tenuous at best. Reninger barred a tort action by Department of Corrections employees by affording a prior administrative decision of the Personnel Appeals Board preclusive effect. Here, however, the majority denies preclusive effect to a fact-specific administrative determination that the arresting officer did not have probable cause to stop Vasquez. For much the same reasons articulated in the Reninger dissent I conclude the majority got it right this time when it in effect overrules Reninger sub silentio. See Reninger, 134 Wash.2d at 458-67, 951 P.2d 782 (Sanders, J., dissenting).
CHAMBERS, J., concurs.
NOTES
[1] Id. RCW 46.61.502(1)(a) reads:

(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:
(a) And the person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506[.]
[2] Clerk's Papers (CP) at 44.
[3] Appellant's Ct. of Appeals Br. at 1.
[4] State v. Vasquez, 109 Wash.App. 310, 34 P.3d 1255 (2001).
[5] State v. Vasquez, 146 Wash.2d 1008, 51 P.3d 87 (2002).
[6] Higa was arrested and charged with DUI. At his administrative hearing, the hearing officer rescinded the revocation of Higa's license. Higa then moved to dismiss the criminal charges based on collateral estoppel.
[7] Gusman was in a car stopped by the sheriff. The officer conducted a field sobriety test on Gusman because the officer claimed she had been driving and had swapped seats with the passenger. Gusman refused to submit to a BAC (blood alcohol content) test. The hearing officer who conducted the license revocation hearing reinstated Gusman's license. The hearing officer asserted that the state did not prove that Gusman was in fact the one operating the vehicle. Gusman claimed collateral estoppel and moved to dismiss the criminal charges.
[8] Review denied, 115 Wash.2d 1029 (1990), and cert. denied, 499 U.S. 948, 111 S.Ct. 1415 (1991).
[9] Reninger v. Dep't of Corrections, 134 Wash.2d 437, 951 P.2d 782 (1998), where we held that a prior administrative decision of the Personnel Appeals Board (PAB) had preclusive effect, is not applicable to this case. The basis for the Reninger holding was that the appellants were "afforded and took advantage of numerous procedures" that exist in superior court trials. Reninger, 134 Wash.2d at 451, 951 P.2d 782. The Reninger appellants were represented by counsel who gave opening and closing arguments; called witness on their behalf and cross-examined the State's witnesses; subpoenaed and obtained documents through PAB's formal discovery process prior to the hearing; and even conducted formal depositions under oath. Id. Reninger is distinguishable from the present case because Vasquez's license suspension hearing was not as thoroughly conducted as the administrative hearing in Reninger. Furthermore, Reninger was dealing with an administrative hearing that is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW, while an administrative license suspension hearing is exempt from the APA. See infra note 11.
[10] RCW 46.20.308(6) states in pertinent part:

If, after arrest ... a test ... of the person's blood or breath is administered and the test results indicate that the alcohol concentration of the person's breath or blood is 0.08 or more..., the arresting officer or other law enforcement officer at whose direction any test has been given ... shall:
. . . .
(b) Serve notice in writing on the person on behalf of the department of his or her right to a hearing....
[11] RCW 34.05.030(2) [chapter 34.05 RCW is the Administrative Procedure Act] states in pertinent part:

The provisions of RCW 34.05.410 through 34.05.598 [adjudicative proceedings] shall not apply:
. . . .
(b) ... to the denial, suspension, or revocation of a driver's license by the department of licensing[.]
[12] RCW 46.20.329 [Formal hearingProcedures, notice, stay] states in relevant part: "A formal hearing shall be conducted by the director or by a person or persons appointed by the director from among the employees of the department."
[13] The administrative hearing concluded on May 30, 2000. CP at 44. The criminal prosecution concluded on July 13, 2000. CP at 113.
[14] The order of dismissal states, "After full and detailed review of the evidence admitted at this hearing the Hearing Officer enters a ruling...." CP at 44 (emphasis added). The language signifies that the hearing officer reviewed only the two exhibits admitted into evidence.
[15] For example, Sergeant Jones' report did not state that Vasquez's car drove along a curve, kicking up debris and leaving a cloud of dust. CP at 3-5. However, at trial, Sergeant Jones testified that the car had done so. Report of Proceedings (RP) at 48. This shows that more precise details come out at trial than in an officer's report. Furthermore, on more than one occasion, Sergeant Jones had to refer to his officer's report to refresh his memory. See RP at 45 and 217.
[16] The testimony of Sergeant Jones constituted over 100 pages of court transcript. RP at 15-72 and 176-262.