# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58292-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MICHAEL T. WAYE, | |
| Appellant. | |

CHE, J. — Michael T. Waye appeals his convictions for two counts of first degree unlawful possession of a firearm and one count of possession of an unlawful firearm, and the trial court's denial of his CrR 3.6 motion to suppress.

Sergeant Brian Spera found Waye's vehicle stop in the middle of an intersection to be suspicious and proceeded to follow Waye who was speeding. After blocking the vehicle, Sergeant Spera ordered Waye to exit the vehicle and handcuffed him. Pursuant to a search warrant for the vehicle, Sergeant Spera found two boxes of ammunition, a pistol, and a shotgun, among other things. Waye moved under CrR 3.6 to suppress any evidence gathered from the stop. The trial court denied Waye's motion. The jury convicted Waye of two counts of first degree unlawful possession of a firearm and one count of possession of an unlawful firearm. The trial court sentenced Waye and imposed a $500 crime victim penalty assessment (VPA).

No. 58292-9-II

Waye argues (1) Sergeant Spera did not have a reasonable articulable suspicion to stop Waye for speeding, (2) Sergeant Spera's seizure of Waye was unconstitutionally pretextual, (3) if we find that Sergeant Spera's seizure of Waye was a lawful mixed-motive stop, then we should disregard *State v. Chacon Arreola*,[1] (4) there is insufficient evidence to sustain Waye's firearm convictions, and (5) the VPA should be stricken. The State concedes that the VPA should be stricken.

We hold that Sergeant Spera had a reasonable articulable suspicion of a traffic infraction, that Waye's stop was not pretextual, and that sufficient evidence exists to convict Waye of two counts of first degree unlawful possession of a firearm and one count of possession of an unlawful firearm.

We affirm Waye's convictions and the trial court's denial of his CrR 3.6 motion to suppress but remand to the trial court to strike the VPA.

FACTS

BACKGROUND

On October 17, 2020, around 1:30 a.m., Sergeant Spera was on traffic patrol in his marked sheriff's vehicle investigating traffic violations, drug activity, and assaults in an area of rural Mason County. Sergeant Spera saw a pickup truck stop for about a minute in the middle of an intersection and then make a sharp left turn. Sergeant Spera suspected the vehicle was involved in suspicious activity given the various criminal activities common to the area at the time and because the truck's behavior was inconsistent with typical driving behavior.

---

[1] 176 Wn.2d 284, 292, 290 P.3d 983 (2012).

2

Sergeant Spera followed the truck without turning his lights on, observed that the truck was driving "excessively fast," and, while pacing the truck, determined that it was traveling approximately 60 mph in a 35-mph zone. Rep. of Proc. (RP) at 40.

The truck turned into a gated driveway and made an abrupt stop. Sergeant Spera parked perpendicularly behind the truck, blocking it from exiting, and then turned on his spotlight as the driver exited the truck. Sergeant Spera stepped out of his vehicle and took cover behind his engine block due to his concerns about his safety. Sergeant Spera was concerned because

> [he] had [blocked] a vehicle and in a known drug area that multiple assaults had been occurring during this time frame, at 1:00 in the morning, driving suspiciously, speeding away from [him], probably negligently, on that roadway due to the number of residences driveways and dog legs at a high speed, came to an abrupt stop at a driveway with a pull gate on it.[2]

RP at 59-60. Sergeant Spera recognized the driver as Waye and knew that Waye had an active felony warrant out for his arrest. Sergeant Spera instructed Waye to come towards him, but Waye did not comply.

Eventually, Sergeant Spera handcuffed Waye and sat him on the ground before he contacted the truck passenger.

Sergeant Spera peered into the truck and saw a box of ammunition[3] protruding from a hole inside the bench seat below the driver's steering wheel. This prompted him to apply for a search warrant for the truck. Sergeant Spera allowed the passenger to take her personal items from the truck before it was impounded. When the passenger removed her bag from the "center hump of the floorboard where the transmission [was] for the truck," she revealed a pistol

---

[2] Dog legs are ninety-degree turns.

[3] Sergeant Spera knew that Waye was not able to possess firearms.

underneath, which was placed with the grip facing the driver and the muzzle facing away "as if it was just set down by the driver." RP at 252. Sergeant Spera stopped the passenger from removing any other items from the truck.

After obtaining a search warrant, Sergeant Spera and another officer searched the truck. There were fresh shooting targets on the passenger side floorboard. The pistol and box of .380 caliber rounds of ammunition, which Sergeant Spera observed previously, were lying on the passenger side floorboard and protruding from a hole inside the driver's side bench seat, respectively. The pistol's magazine held .380 caliber rounds of ammunition.

In addition, there was a 12-gauge shotgun located between the back wall of the truck cabin and the backrest of the driver's side of the bench seat. The shotgun was modified such that the barrel was 15 13/16 inches in length. The overall length of the shotgun was 35 1/2 inches. The "sawed off portion" of the altered barrel showed the "irregular nature of the muzzle," indicative that it had not been manufactured that way. RP at 282. Given the location of the shotgun, it would have been accessible by a person seated in the driver's seat.

Adjacent to the shotgun, Sergeant Spera found a piece of paper with "Mitchell Waye dad's ring" written on it. RP at 276. "Mitchell Waye" is the name of Waye's brother and also Waye's known alias. Waye had been convicted of two crimes of dishonesty, one of which was a first degree criminal impersonation conviction stemming from Waye using his brother's name.[4]

---

[4] Waye had previously been convicted of unlawful possession of a firearm and knew that he was not allowed to possess a firearm on the night of the incident.

4

The officers also found a black backpack, which contained a box of 12-gauge shotgun shells and a smaller bag. The smaller bag contained, among other things, two Washington identification (ID) cards belonging to Waye.

Waye had borrowed the truck that night from his roommate so he could take the passenger to her house. Waye occasionally borrowed the truck. Waye saw the ammunition between his legs but denied any knowledge of the pistol and shotgun in the truck. Waye also denied knowledge of how his ID cards got in the bigger backpack with the shotgun shells.

The State charged Waye with two counts of first degree unlawful possession of a firearm and one count of possession of an unlawful firearm.[5]

PROCEDURAL BACKGROUND

I. CRR 3.6 MOTION

In April 2021, Waye moved under CrR 3.6 to suppress all evidence obtained during his unlawful search and seizure and to dismiss his charges. In his motion, Waye primarily argued that the stop was an unlawful pretextual stop because there was no evidence that Sergeant Spera attempted to stop Waye for a traffic infraction, and that Sergeant Spera did not have a reasonable and articulable suspicion of criminal activity under *Terry v. Ohio*.[6] The State argued that Sergeant Spera had a reasonable suspicion that Waye committed the traffic offense of speeding because Spera pursued Waye, travelling over 60 mph in a 35-mph zone. The State also argued

---

[5] The State also charged Waye with one count of unlawful possession of a controlled substance with intent to deliver. The jury acquitted Waye of this charge, and it is not the subject of this appeal.

[6] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

that the stop was not pretextual because Sergeant Spera initially observed Waye stopping in the middle of an intersection.

After taking testimony consistent with the facts above, the trial court entered findings of fact and conclusions of law, including Finding of Fact (FF) 5, that "[w]hile following the truck on Stadium Beach, [Sergeant] Spera observed the vehicle travelling at well over the posted speed limit, estimating approximately 60 mph in a posted 35 mph zone." Clerk's Papers (CP) at 67. The court denied Waye's motion. In Conclusions of Law (CL) A, the court concluded that Sergeant Spera had reasonable suspicion that a traffic infraction, speeding, had occurred in his presence and in CL B, that "[e]ven if [the stop] is properly considered a mixed-motive stop, both to investigate the traffic violation and in response to other known suspicious activities in the area, it is still a valid contact." CP at 68.

## II. TRIAL AND SENTENCING

After taking additional evidence consistent with the facts above, a jury convicted Waye of the firearm charges. At sentencing, the trial court "impose[d] only the mandatory legal financial obligation of the crime victims fund, $500" and "waive[d] the $200 filing fee based upon Mr. Waye's limited ability to meet his legal financial obligations." RP at 565.

Waye appeals.[7]

## ANALYSIS

Waye argues that the trial court erred by denying his CrR 3.6 motion, specifically arguing (1) Sergeant Spera did not have a reasonable articulable suspicion to stop Waye for speeding, (2) Sergeant Spera's seizure of Waye was unconstitutionally pretextual, (3) if we find that Sergeant

---

[7] The trial court granted an order of indigency for purposes of his appeal.

Spera's seizure of Waye was a lawful mixed-motive stop, then we should disregard

*Chacon Arreola*, (4) there is insufficient evidence to sustain Waye's firearm convictions, and

(5) the VPA should be stricken. The State concedes that the VPA should be stricken.

## I. LEGAL TRAFFIC STOPS

Waye argues that there was not a lawful basis for the traffic stop because Sergeant Spera

did not have a reasonable articulable suspicion to stop Waye for speeding. We disagree.

### A. *Standard of Review*

When reviewing a trial court's suppression decision, we review the court's findings of

fact for substantial evidence and whether those findings support its conclusions of law. *State v.*

*Alexander*, 5 Wn. App. 2d 154, 159, 425 P.3d 920 (2018). Substantial evidence exists where

there is enough evidence to persuade a fair-minded person of the truth of the finding. *Id.* We

treat unchallenged findings as true on appeal and review de novo the trial court's conclusions of

law. *Id.* We also review de novo the question of whether a warrantless stop is constitutional. *Id.*

### B. *Sergeant Spera Had a Reasonable Articulable Suspicion of a Traffic Infraction*

Waye challenges one of the trial court's findings of fact and one conclusion of law. First,

Waye argues FF 5, that Sergeant Spera observed Waye speeding in a 35-mph zone, is not

supported by substantial evidence because there was no foundation for Sergeant Spera's

testimony. Next, Waye argues that, absent FF 5, there was no lawful basis for the trial court to

conclude in CL A that Sergeant Spera "had reasonable suspicion that a traffic infraction

(speeding) had occurred in his presence." CP at 68. We disagree that there was insufficient

evidence to support FF 5 and that CL A is unsupported by the findings.

7

Article I, section 7 of the Washington Constitution provides, "No person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." A person is seized for purposes of article I, section 7 "if, based on the totality of the circumstances, an objective observer could conclude that the person was not free to leave, to refuse a request, or to otherwise terminate the encounter due to law enforcement's display of authority or use of physical force." *State v. Sum*, 199 Wn.2d 627, 631, 511 P.3d 92 (2022).

We presume that a warrantless search or seizure violates article I, section 7 unless the State shows that the search or seizure falls within specific narrow exceptions to the warrant requirement. *Chacon Arreola*, 176 Wn.2d at 292. Our Supreme Court recognizes certain categories of narrow exceptions including, among other things, investigative stops. *Id.*

"Warrantless traffic stops are constitutional under article I, section 7 as investigative stops, but only if based upon at least a reasonable articulable suspicion of either criminal activity or a traffic infraction, and only if reasonably limited in scope." *Id.* at 292-93. A reasonable articulable suspicion means there "'is a substantial possibility that criminal conduct has occurred or is about to occur.'" *State v. Snapp*, 174 Wn.2d 177, 198, 275 P.3d 289 (2012) (quoting *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986)).

We look at the totality of the circumstances known to the officer when evaluating the reasonableness of their suspicion. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017). "'The totality of circumstances includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty.'" *Id.* at 811-12 (quoting *State v. Fuentes*, 183 Wn.2d 149, 158,

8

352 P.3d 152 (2015)).  The officer's reasonable suspicion must be individualized to the person being stopped.  *Id.* at 812.

Here, the trial court found that "[w]hile following the truck on Stadium Beach, [Sergeant] Spera observed the vehicle travelling at well over the posted speed limit, estimating approximately 60 mph in a posted 35 mph zone."  CP at 67.  Sergeant Spera paced the truck at 60 mph, which was nearly double the posted speed limit of 35 mph.  Thus, the trial court's factual finding was supported by substantial evidence as there was enough evidence to persuade a fair-minded person that Sergeant Spera observed the truck driving over the posted speed limit.

But Waye contends "there must be some foundational basis for the reliability and validity of the pacing attempt."  Am. Br. of Appellant at 12.  Relatedly, Waye asserts that "[t]here was no explanation of [Sergeant] Spera's knowledge regarding pacing, nor any explanation of the procedures he employed."  Am. Br. of Appellant at 12.  In support of his contention, Waye cites to *State v. Vasquez*, 109 Wn. App. 310, 318, 34 P.3d 1255 (2001), *aff'd*, 148 Wn.2d 303 (2002).  But Waye's reliance on *Vasquez* is inapposite because he mischaracterizes the case's holding.

In *Vasquez*, the trial court found that the officer had enough time to observe and pace the defendant for a speeding infraction.  *Id.*  Division Three of this court held that the trial court's factual finding was supported by substantial evidence because the officer testified that he paced the defendant's vehicle at 38 mph and the speed limit was 25 mph.  *Id.* at 319.  Therefore, the officer had probable cause to stop the defendant's car for a traffic infraction, and the trial court's conclusion that the officer had probable cause was correct as a matter of law.  *Id.*  Waye asserts that Division Three of this court "not[ed] the stop was justified because there was testimony that the officer 'had enough time to observe and pace [the defendant] for the offense of speeding'".

9

Am. Br. of Appellant at 12. But the court never articulated a time or distance requirement for an officer to justify a stop while pacing a vehicle. Thus, Waye mischaracterizes the trial court's factual finding as a requirement that there be "some foundational basis for the reliability and validity of the pacing attempt." Am. Br. of Appellant at 12.

Waye fails to point to any authority requiring testimony on the technical requirements of the method used to determine the speeding infraction for holding an officer's observation of speeding sufficiently supported. *Matter of Campbell*, 27 Wn. App. 2d 251, 264, 533 P.3d 144 (2023) ("If a party provides no citation in support of a proposition, we may assume that counsel, after diligently searching, has found none"); *see also* RAP 10.3(a)(6).

Next, Waye argues that, absent FF 5, there was no lawful basis for the trial court to conclude in CL A that Sergeant Spera "had reasonable suspicion that a traffic infraction (speeding) had occurred in his presence." CP at 68. But as established above, a rational trier of fact could have found that Sergeant Spera observed Waye speeding, and this finding supports the trial court's conclusion that Sergeant Spera had a reasonable suspicion that speeding had occurred in his presence. Thus, we hold that Sergeant Spera had a reasonable articulable suspicion of a traffic infraction.

C.      *Waye's Traffic Stop Was Not Pretextual*

Waye challenges the trial court's CL B that "[e]ven if [his stop] is properly considered a mixed motive stop, both to investigate the traffic violation and in response to other known suspicious activities in the area, it is still a valid contact." CP at 68. Relatedly, Waye argues that his seizure was unconstitutionally pretextual. Specifically, he contends, "[S]peeding was mere

10

pretext to cover [Sergeant Spera's] real goal: launch a speculative investigation based on his hunch." Am. Br. of Appellant at 19. We disagree.

Under article I, section 7, pretextual traffic stops are unconstitutional. *Chacon Arreola*, 176 Wn.2d at 294.

Pretext is a false reason that is used to disguise a real motive. *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). An officer conducts a pretextual stop when they stop a vehicle "to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code." *Id.* An officer cannot use an arrest as a pretext to search for evidence. *State v. Ladson*, 138 Wn.2d 343, 353, 979 P.2d 833 (1999).

When evaluating whether a stop is pretextual, we consider the "totality of the circumstances," including the subjective intent of the officer and the objective reasonableness of the officer's behavior. *Id.* at 358-59. "Under *Ladson*, even patrol officers whose suspicions have been aroused may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop." *State v. Hoang*, 101 Wn. App. 732, 742, 6 P.3d 602 (2000).

In *Ladson*, officers followed a vehicle for several blocks, looking for a legal justification to stop the vehicle and investigate their suspicions that the occupants were involved in trafficking narcotics. 138 Wn.2d at 345-46. The officers eventually stopped the vehicle because it had expired license tabs and arrested the driver for driving while license suspended. *Id.* at 346. They conducted a full search of the vehicle and passenger, Ladson, whom they eventually arrested and charged with crimes. *Id.* at 346-47. The court held that such pretextual traffic stops violate article I, section 7 because they are seizures made without lawful authority. *Id.* at 358.

Here, Sergeant Spera was conducting ongoing investigations into traffic violations and criminal activity. The truck's stop in the middle of an intersection for about a minute, at 1:30 a.m., in an area where there had been, among other crimes, much drug activity, drew Sergeant Spera's attention. Sergeant Spera followed the truck and determined that the truck was speeding at 60 mph in a 35-mph zone.

Unlike the officers in *Ladson*, Sergeant Spera did not follow the truck, looking for a legal basis to conduct a stop. Sergeant Spera was investigating traffic violations, among other things, and Waye committed the traffic infraction of speeding in his presence, giving Sergeant Spera a legal justification to stop the truck. While we acknowledge that Sergeant Spera was generally suspicious of criminal activity given the rise in crimes in that area, "[u]nder *Ladson*, even patrol officers whose suspicions have been aroused may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop." *Hoang*, 101 Wn. App. at 742. Thus, under *Ladson*, Waye's stop was not pretextual.

Even if Waye's stop is considered a mixed-motive stop, as discussed below, it was not unconstitutionally pretextual. [8] Waye argues that Sergeant Spera's alleged reason for the stop was not the actual, conscious, and independent basis for the stop. We disagree.

---

[8] Waye argues that if we find Sergeant Spera's seizure of Waye was a lawful mixed-motive stop, then we should disregard *Chacon Arreola*. Waye contends that the court's decision in *Chacon Arreola* "is wrong" and that it is inconsistent with *Ladson*. Am. Br. of Appellant at 23-24. Waye asks us to disregard precedent because he can show that the actual, conscious, and independent test is incorrect and harmful. In support of his contention that the test is incorrect and harmful, Waye claims the test is inconsistent with pretextual justification case law and article I, section 7. Waye also claims the test contributes to racial profiling. We need not reach the merits of Waye's argument because this court can neither overrule nor disregard a controlling state Supreme Court case. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997); *see also State v. McNeal*, 142 Wn. App. 777, 788, 175 P.3d 1139 (2008).

12

A mixed-motive traffic stop is a traffic stop that is based on both legitimate and illegitimate grounds. *Chacon Arreola*, 176 Wn.2d at 297. A mixed-motive traffic stop is not unconstitutionally pretextual "so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop." *Id.* An officer's investigation of a traffic infraction is an actual, conscious, and independent cause of the traffic stop if the officer "actually and consciously makes an appropriate and independent determination that addressing the suspected traffic infraction . . . is reasonably necessary in furtherance of traffic safety and the general welfare." *Id.* at 297-98. "That remains true even if the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason that is insufficient to justify a stop." *Id.* at 299.

When evaluating whether an officer stopped a vehicle for a legitimate and independent reason "and thus would have conducted the traffic stop regardless," the trial court should consider whether the officer had an illegitimate reason or motivation. *Id.* However, while the presence of illegitimate reasons for the stop will often be relevant to that inquiry, the focal point should be the officer's alleged legitimate reason for the stop and whether it was an actual, conscious, and independent cause. *Id.* at 300. We cannot expect an officer "to simply ignore the fact that an appropriate and reasonably necessary traffic stop might also advance a related and more important police investigation." *Id.* at 299.

In *Chacon Arreola*, an officer responded to a report of a possible DUI (driving under the influence). *Id.* at 288. The officer followed a vehicle matching the report's description for approximately half of a mile, did not observe any signs of DUI, but did see that the vehicle had

13

an altered exhaust in violation of RCW 46.37.390. *Id.* at 288-89. The officer then pulled over the vehicle, still without seeing any signs of intoxicated driving. *Id.* at 289. The stop was a mixed-motive stop. *Id.* at 298. The trial court found that the defendant's exhaust infraction was an actual reason for the stop and that the officer would have stopped the defendant for the exhaust infraction even without the previous report of a possible DUI. *Id.* These findings were unchallenged. *Id.* at 300.

Our Supreme Court held that the officer had a reasonable articulable suspicion that the defendant was violating RCW 46.37.390, that the suspected traffic infraction was an actual, conscious, and independent cause of the traffic stop, and that the trial court was correct to conclude that the stop was not pretextual. *Id.* The court also noted that "[t]he fact that [the officer] was also interested in and motivated by a related investigation [was] irrelevant, even if that investigation could not provide a legal basis for the traffic stop." *Id.*

Here, there were a number of residential driveways and ninety-degree turns along the road. And Sergeant Spera determined that Waye was speeding and driving in a manner that was inconsistent with typical driving behavior. Sergeant Spera therefore actually and consciously made an appropriate and independent determination that stopping Waye would be reasonably necessary to further traffic safety. Under *Chacon Arreola*, this remains true even if the legitimate reason for the stop, addressing the speeding infraction, was secondary, and Sergeant Spera was primarily motivated by a hunch that criminal activity was afoot or some other reason that is insufficient to justify a stop. 176 Wn.2d at 299. Moreover, we cannot expect Sergeant Spera "to simply ignore the fact that an appropriate and reasonably necessary traffic stop might also advance a related and more important police investigation." *Id.*

14

Thus, under *Chacon Arreola*, Waye's traffic stop was not pretextual. Under the totality

of the circumstances, the trial court's FF 5 is supported by substantial evidence, and the findings

of fact support the court's CL A and CL B. The trial court did not err in denying Waye's motion

to suppress evidence.

## II. SUFFICIENCY OF THE EVIDENCE

Waye argues that there is insufficient evidence to sustain his firearm convictions because

there is no evidence that he knew the shotgun in the truck was a short-barreled shotgun, and there

is minimal evidence that he knew the firearms were in the truck. We disagree.

A. *Legal Principles*

When examining a challenge to the sufficiency of the evidence, we look at whether, after

viewing the evidence in the light most favorable to the State, "'any rational trier of fact could

have found the essential elements of [the crime] beyond a reasonable doubt.'" *State v. Bertrand*,

3 Wn.3d 116, 139, 546 P.3d 1020 (2024) (quoting *State v. Hampton*, 143 Wn.2d 789, 792, 24

P.3d 1035 (2001)). Such a challenge necessarily admits the truth of the State's evidence and all

reasonable inferences drawn from the evidence. *State v. Bergstrom*, 199 Wn.2d 23, 41, 502 P.3d

837 (2022). We consider circumstantial and direct evidence to be equally reliable. *State v.

Restvedt*, 26 Wn. App. 2d 102, 116, 527 P.3d 171 (2023). We defer to the trier of fact on issues

of witness credibility, conflicting testimony, and the persuasiveness of evidence. *Bergstrom*, 199

Wn.2d at 41.

Possession can be actual or constructive. *State v. Flores*, 18 Wn. App. 2d 486, 494, 492

P.3d 184 (2021). A person actually possesses an object if it is in the "'personal custody of the

person charged with possession,'" whereas a person constructively possesses an object if they

15

have "'dominion and control'" over it. *Id.* (quoting *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994)). "[U]nwittingly having a firearm located close enough to a person who could reduce it to their control is sufficient to establish constructive possession." *Id.*

B.      *Sufficient Evidence Exists to Show That Waye Knowingly Possessed the Firearms*

First, Waye argues that there is insufficient evidence to sustain his firearm convictions because there is minimal evidence that he knew the pistol and shotgun were in the truck. In other words, Waye argues the State failed to prove that he knowingly possessed the firearms. We disagree.

Under former RCW 9.41.040(1) (2020), a person is guilty of first degree unlawful possession of a firearm if they own, have in their possession, or have in their control any firearm after having previously been convicted of any serious offense.

Under RCW 9.41.010(45), a person may lawfully own a shotgun if the barrel length is more than 18 inches and the overall length is more than 26 inches. However, RCW 9.41.190 criminalizes, among other things, the possession of a short-barreled shotgun.[9]

In *State v. Williams*, our Supreme Court addressed whether the legislature intended to hold strictly liable those who possess certain firearms, including short-barreled shotguns, under RCW 9.94.190 because that statute contains no express knowledge element. 158 Wn.2d 904, 908, 148 P.3d 993 (2006). There, the State charged the defendant with one count of possession of an unlawful firearm under RCW 9.41.190(1) after an officer found a short-barreled shotgun in the bathroom of the defendant's house. *Id.* at 906-07. The defendant had placed it in a locked

---

[9] This statute has been amended, but none of the subsections of the statute relevant to Waye's conviction have been amended, so we cite to its current version.

bathroom for safety reasons after he had found the gun while cleaning out his grandmother's garage. *Id.* at 906.

The court held that "a defendant must know the characteristics of the firearm that make the firearm illegal" to be convicted under RCW 9.41.190. *Id.* at 916. However, the State is not required to prove that the defendant had actual knowledge of the illegality of possessing a short-barreled shotgun. *Id.* Rather,

> [t]he State's burden is to prove that the defendant *knowingly possessed an unlawful weapon and that* [*they*] *knew, or should have known, the characteristics that make the weapon unlawful*. These facts will be readily apparent in the case of a short-barreled rifle or short-barreled shotgun since, in most cases, the owner of such a weapon can easily determine its length.

*Id.* (Emphasis added.) The court concluded that the defendant's weapon "was considerably modified" and that the jury was "more than justified in finding that [the defendant] knew or should have known that the barrel of his shotgun was less than 18 inches (5 inches shorter than the law permits) and thus met the legal definition of a short-barreled shotgun." *Id.* at 917.

"Knowing possession" is an element of first degree unlawful possession of a firearm. *See State v. Anderson*, 141 Wn.2d 357, 365-66, 5 P.3d 1247 (2000); *see also State v. Releford*, 148 Wn. App. 478, 495, 200 P.3d 729 (2009). Although the court in *Anderson* analyzed second degree unlawful possession of a firearm and did not explicitly address first degree unlawful possession of firearm, nothing suggests that the legislature intended knowledge to be an element of the former and not the latter.

For Waye to be convicted of first degree unlawful possession of a firearm and possession of an unlawful firearm, the State had to prove that he knowingly possessed the pistol and shotgun. *Williams*, 158 Wn.2d at 916; *see also Anderson*, 141 Wn.2d at 365-66. While Waye

17

attempts to draw inferences from the evidence in a light favorable to him, we must admit the truth of the State's evidence and all reasonable inferences drawn therefrom and view the evidence in the light most favorable to the State.

Here, the State presented significant evidence showing Waye's knowing, constructive possession of the firearms. The pistol was located on the "center hump of the floorboard where the transmission [was] for the truck" with the grip facing the driver and the muzzle facing away "as if it was just set down by the driver." RP at 252. Further, the shotgun would have been accessible by a person seated in the driver's seat. Such evidence establishes Waye's constructive possession of the firearms because the firearms were close enough to him that he could reduce them to his control. *Flores*, 18 Wn. App. 2d at 494.

Furthermore, officers found protruding from a hole inside the driver's side bench seat a box of ammunition containing the same caliber rounds of ammunition as those found in the pistol's magazine. They also found adjacent to the shotgun a piece of paper with "Mitchell Waye dad's ring" written on it. RP at 276. "Mitchell Waye" is the name of Waye's brother and Waye's known alias. RP at 351. Indeed, Waye confirmed that he had been convicted of two crimes of dishonesty, one of which was first degree criminal impersonation, which involved Waye using his brother's name for an unlawful purpose. *See* RCW 9A.60.040. The officers also found within a black backpack a box of 12-gauge shotgun shells, matching the gauge of the shotgun found, and a smaller bag containing two ID cards belonging to Waye. Thus, there is ample evidence that supports Waye's firearm convictions such that any rational trier of fact could have found that Waye knowingly possessed the firearms beyond a reasonable doubt.

Waye asserts that this evidence and the inferences drawn therefrom are unreasonable, speculative, or otherwise unmeaningful. He cites to *State v. Colquitt*, 133 Wn. App. 789, 798, 137 P.3d 892 (2006) ("[T]he existence of a fact cannot rest upon guess, speculation, or conjecture") and dicta from *State v. Jackson*, 112 Wn.2d 867, 876, 774 P.2d 1211 (1989) (An inference should not arise when there are "other reasonable conclusions that would follow from the circumstances."). We are unpersuaded by Waye's broad assertion.

In *Colquitt*, the court agreed with the defendant that speculation and an unverified field test *alone* were insufficient to support his conviction for unlawful possession of a controlled substance. 133 Wn. App. at 794. Even though the defendant agreed to admission of the police report, which included a field test of cocaine and an officer's visual identification of the drug, there were no laboratory test results. *Id.* at 792. The court held the police report and field test were insufficient evidence of the defendant's charge because the officer's visual identification of the drug "was based on his conjecture, at best." *Id.* at 792, 800. Here, the record does not show that the trial court relied solely on guess, speculation, or conjecture. Indeed, a reasonable inference from the evidence is that Waye knowingly possessed the pistol and shotgun.

And although Waye denied that he knew the firearms were in the truck, the jury found Sergeant Spera's testimony to be more credible. And we defer to the trier of fact's determinations on the persuasiveness of the evidence and issues of witness credibility. *State v. Martinez*, 123 Wn. App. 841, 845 99 P.3d 418 (2004). Thus, there was sufficient evidence that Waye knew the pistol and shotgun were in the truck.

19

ii. *Sufficient Evidence Exists That Waye Knew the Shotgun Was a Short-Barreled Shotgun*

Next, Waye contends that the State produced insufficient evidence to show that he knew the shotgun found in the truck was a short-barreled shotgun. We disagree.

For Waye to be convicted of possession of an unlawful firearm, the State also had to prove that Waye knew, or should have known, the characteristics that made the shotgun unlawful. *Williams*, 158 Wn.2d at 916. Here, the barrel on the shotgun measured 15 13/16 inches, with an overall length of 35 1/2 inches. Thus, the barrel measured short of the legally required minimum length by a little over 2 inches. Sergeant Spera testified that the "sawed off portion" of the altered barrel showed "the irregular nature of the muzzle," indicative that it had not been manufactured that way. RP at 282. A reasonable inference from Waye's possession of the shotgun is that he knew or should have known that the barrel of the shotgun was less than 18 inches. Even if a difference of 2 inches was not easily noticeable on the shotgun barrel, it was clear that the barrel had been considerably modified.

Waye cites to *State v. Jones*, 13 Wn. App. 2d 386, 401, 463 P.3d 738 (2020), for the proposition that "[p]ossession of an item alone is insufficient to conclude the possessor knows of the item's characteristics." Am. Br. of Appellant at 34. But Waye's reliance on *Jones* is misplaced. In *Jones*, Division Three of this court discussed a wholly different criminal statute and stated specifically that "[m]ere possession of stolen property is insufficient to support a conviction for possession of a stolen vehicle under RCW 9A.56.068." 13 Wn. App. 2d at 401. Further, Waye asserts that there was no testimony that he knew there was a shotgun in the truck, no evidence that he examined the shotgun and determined its barrel was too short, and no

20

evidence that he ever interacted with the shotgun. Waye fails to point to any case where a court has found such facts to be determinative.

There was sufficient evidence for any rational trier of fact to have concluded that Waye knew or should have known the characteristics that made the shotgun unlawful. We hold that the State produced sufficient evidence to convict Waye of two counts of first degree unlawful possession of a firearm and one count of possession of an unlawful firearm.

### III. LEGAL FINANCIAL OBLIGATIONS

Waye argues this court should strike the VPA because, while the sentencing judge did not make an express finding of indigency, it is clear from the record that they were treating Waye as indigent. The State concedes. We accept the State's concession.

Amended RCW 7.68.035(4) requires that no VPA be imposed if the trial court finds at the time of sentencing that the defendant is indigent as defined in RCW 10.01.160(3). Amended RCW 7.68.035(4) applies to Waye because this case is on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). At sentencing, the trial court "impose[d] only the mandatory legal financial obligation of the crime victims fund, $500" and "waive[d] the $200 filing fee based upon Mr. Waye's limited ability to meet his legal financial obligations." RP at 565. The trial court also granted an order of indigency for purposes of Waye's appeal. In light of these circumstances, the State's concession, and the fact that this case is on direct appeal, we remand to the trial court to strike the VPA.

21

No. 58292-9-II

CONCLUSION

We hold that Sergeant Spera had a reasonable articulable suspicion of a traffic infraction, that Waye's stop was not pretextual, and that there was sufficient evidence to convict Waye of two counts of first degree unlawful possession of a firearm and one count of possession of an unlawful firearm.

We affirm Waye's firearm convictions and the trial court's denial of his CrR 3.6 motion to suppress but remand to the trial court to strike the VPA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Veljacic, A.C.J.

22